NEW AMSTERDAM CASUALTY CO. *v.* PERRYMAN.

(Division A. March 21, 1932.)

[140 So. 342. No. 29596.]

John W. Crisler, of Clarksdale, for appellant.

Smith & Cutrer and **Ed Smith**, all of Clarksdale, for appellees.

**McGowen, J.**, delivered the opinion of the court.

Perryman, the appellee, sued the New Amsterdam Casualty Company, the appellant, on a contract of accident insurance. The policy of insurance was made an exhibit to the declaration. A demurrer was interposed thereto and was overruled by the court, and the case proceeded to trial, resulting in a judgment for the amount of the demand, from which appeal is prosecuted by the casualty company.

The contract undertook to insure appellee "against loss resulting solely from bodily injuries, effected directly and independently of all other causes, through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane), as specified in the following schedules, respectively, subject to the provisions and limitations hereinafter contained." There then followed the schedule and restrictive clauses of the policy. As a part thereof, under the heading "Other Provisions," appears the following: "(c) This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly by medical or surgical treatment except such as may result directly from surgical operations made necessary solely by injuries covered by this policy and performed within ninety days after date of accident."

As the facts state a stronger case for appellee than his declaration, we shall state plaintiff's case, and dispose of the case, presented on a construction of the contract, on the question whether or not the insurance company was entitled to a peremptory instruction.

Perryman met his family physician on the streets of Lula, Mississippi, and told him that he had been taking a chill tonic, but continued to have chills, and asked the physician what to do. The physician replied, in effect,

that he should take thirty grains of quinine that night. By his own negligence, or that of the druggist, Perryman took sixty grains of quinine during the night, and on the following morning he had difficulty in moving his feet and legs, or in walking. This rapidly grew worse until he became totally paralyzed in his limbs and was unquestionably in a serious condition, applying for treatment in many places and consulting with many physicians. There is no question but that, if the casualty company is liable under this contract, Perryman is entitled to recover the amount for which he brought suit. He and his family physician were positive in their testimony that his condition was brought about by the double dose of quinine. His family physician based his opinion upon his personal examination and upon the fact, known to him, that appellant had an idiosyncrasy for quinine. Many physicians testified as experts that the administration of a dose of quinine amounting to sixty grains within the given time would not produce this or any form of paralysis of the limbs, and were positive that the quinine did not and could not have produced the effect which, it is contended, resulted to the plaintiff herein.

It is contended by the appellant, casualty company, that the overwhelming weight of the evidence was to the effect that the accidental taking of the overdose of quinine did not produce the result, and that it was brought about by some other cause. It also contends that, under the provision of section (c), set forth at length in this opinion there is no liability; and that, if it be conceded, that the overdose of quinine produced the paralysis, then it was the result directly or indirectly of the medical treatment by the appellee's family physician.

The declaration alleged that appellee took the quinine in doses ''as prescribed by his physician,'' but the

physician construed his action in the premises as not being a treatment, only a mere casual bit of free advice for which he made no charge. The lexicographer defines "treatment" as "the act or manner of treating; management; handling; usage."

The precise question to be determined in this case is whether or not the physician's action was medical treatment, and directly or indirectly caused the paralytic condition of the appellee. It will be observed that this contract between these parties uses chosen language and apt terms to avoid liability in such condition. The parties have a right to make a contract of insurance binding upon them, and however stringent they may be, if not opposed to some public policy or statute, they will be enforced as written, although such contracts are construed strictly against the insurer.

In this case we have the following situation: The patient was ill. Under the allegations of the declaration the relation of physician and patient existed between them. The physician was consulted, and as in most cases the patient stated his symptoms, thereupon the physician prescribed the remedy. From the statement of the patient the physician diagnosed the case, and from the same source he made his prognosis, and therefrom he declared the remedy. The court unhesitatingly declares that it takes judicial knowledge of the fact that quinine, such as was administered in his case, is regarded as a medicine. Every small boy reared in Mississippi at a time when malaria was prevalent, and especially in Delta sections, has had the diagnosis, prognosis, and treatment. It is a matter of common knowledge that quinine is administered for chills. True it is, that in this case the physician and the patient waived an examination by the former, and he acted upon the symptoms declared by the patient. That is not unusual. Under the language of the policy certainly this result was produced indirectly, if not directly, by the treatment of the physician, unless

we shall declare that the physicians of this state who prescribe quinine for patients are not giving them treatment within the meaning of this contract. The concurring cause in bringing about the result was the prescription by the physician, together with the actual taking of an overdose of that prescription. Certainly the fact that no fee was charged in a, particular case by the family physician did not and could not alter the situation. Nor was this a stronger case against the insured in the matter of the strict form of the contract entered into than any case presented to us in the briefs by diligent counsel. The usual language with reference to this exception is "except death or disability caused wholly or in part from medical or surgical treatment." It has been held that under such an exception the insurer was not liable where death was caused by an overdose of opium prescribed by a physician in proper doses. Cooley's Briefs on Insurance, Vol. 6, p. 5309; Couch's Cyc. of Insurance Law, Vol. 6 (1930), sec. 1250. The above rule is supported by the cases of Bayless v. Travellers' Ins. Co., 2. Fed. Cas., p. 1077, No. 1138 reported from the Cir. Court of the Eastern District of N. Y.; and Westmoreland v. Preferred Acc. Ins. Co., 75 Fed. 244, 246, from the Cir. Court of Ga., in which the exception was in these words: "Death . . . resulting, either directly or indirectly, wholly or in part from . . . medical or surgical treatment." In the latter case chloroform administered by an attendant to a patient caused him to suffocate and die.

The appellee relies upon and cites one case in point, Modern Woodmen of America v. Miles, 178 Ind. 105, 97 N. E. 1009, 1010, in which case the physician gave the insured some tablets for a headache, for which he charged fifteen cents, and which were sought by the patient. The court there held that the physician did not render treatment to the patient and did not "manage in the application of remedies," and that the patient did not consult

the physician. Whatever may have influenced the Indiana court to this conclusion is not clear to us and is not controlling with us in its reasoning, for we are of opinion that the malady or accident in this case was the direct or indirect result of a treatment by a physician administered to his patient. At the instance of the patient the physician prescribed orally, and the medicine was administered to cure or alleviate disease, and the casualty company contracted that it would not be liable for such action.

Under the terms of this policy, construed fairly, and under the rules announced by this court, there was no liability, and the case will be reversed and a judgment entered here for the appellant.

Reversed, and judgment here for the appellant.