## BARKERDING v. ÆTNA LIFE INS. CO.
### No. 7931.

Circuit Court of Appeals, Fifth Circuit.
March 7, 1936.

Richard B. Montgomery, Jr., of New Orleans, La., for appellant.

St. Clair Adams, of New Orleans, La., for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The District Court dismissed as setting forth no cause of action a suit upon a policy of accident insurance whose material provisions are these:

"The Aetna Life Insurance Company * * * hereby insures * * * against loss resulting directly and independently of all other causes from bodily injuries effected during the term of this policy solely from accidental means. * * *" "C. This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, by * * * bacterial infections (except pyogenic infections which occur simultaneously with and through an accidental cut or wound) or by any other kind of disease. * * *. This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly by medical or surgical treatment, except such as may result directly from surgical operations made necessary solely by injuries covered by this policy and performed within ninety days after the date of the accident."

There are specified indemnities for loss of time, for hospital confinement, and for the loss of a leg. These indemnities were claimed on facts thus alleged:

"That plaintiff during the month of May, 1933, went to a chiropodist to have a callus removed from his foot; that the said callus became infected and formed an ulcer due to the chiropodist accidentally paring and cutting the said callus too deeply so as to cause a cut or wound on the foot; that the said ulcer was due to a pyogenic infection which occurred simultaneously with and through the accidental cut or wound; that the said ulcer was lanced by plaintiff's attending physician and plaintiff was informed by the said physician that he should remain in bed; that plaintiff did not desire to remain in bed and so informed his attending physician; that his physician then suggested that the condition might be cleared up if heat were applied to the infected place; that plaintiff's wife went around to an electrical shop and asked the electrician there if he knew of electrical appliances which were suitable to be used for this purpose and he informed her that he could make such an appliance in his shop and told her that she should use a certain type of bulb; plaintiff, however, applied to his foot first the heat from an ordinary electric globe, attaching the globe to the appliance sold him by the supply man. This did not seem to generate enough heat so plaintiff's son went back to the electrical shop and obtained the bulb that the said electrician had recommended. Plaintiff then put the said bulb sold him by the supply man into the appliance. Plaintiff noticed that his foot began to be very painful due to the heat, but did not think anything of it. Finally it became so painful that he called the physician and the physician informed him that his foot had been very badly burned due to the fact that the globe which had

been supplied was a 250 Watt carbon light and that he should be taken to the hospital for treatment. This occurred on May 27, 1933. As a result of said burn plaintiff's toe was amputated on July 5, 1933, and on August 23, 1933, his leg."

 In construing the policy, we pay but little mind to the statutes of Louisiana regulating and defining the practice of medicine and chiropody. The policy makes no reference to these statutes, and its words are to be given their ordinary meaning in common speech. Medical and surgical treatment mean what is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it. It includes the things done by the patient to carry out specific directions given for these ends by a physician. A physician sometimes employs mechanical means in his treatment as a surgeon sometimes uses drugs for anesthesia or antisepsis. We may assume without deciding that a chiropodist's treatment is not medical or surgical treatment within the meaning of the policy, and that the words of the petition which say that the chiropodist "accidentally pared and cut the callus too deeply so as to cause a cut or wound on the foot" mean some unintended act or slip rather than an unexpected consequence of an intentional act consented to by the plaintiff.[1] Thus assuming, there would be an accidental wound, the pyogenic infection of which is not excluded from the coverage by the exception of bacterial infections. But this wound did not result "directly and independently of all other causes" in the hospitalization or amputation sued for. Its direct result was to send plaintiff to his physician to seek medical treatment. The treatment consisted first in lancing the ulcer, hardly to be called a surgical operation. Then, as a substitute for staying in bed, the physician prescribed as further treatment the use of heat on the foot. It is not alleged that any accident occurred in the use of the heat. The electrical apparatus chosen was found not to give much heat with an ordinary electric light bulb, and a large one was intentionally substituted. There was then no sudden or extraordinary occurrence. "Plaintiff noticed that his foot began to be very painful, due to the heat, but did not think anything of it. Finally it became so painful that he called the physician and the physician informed him that his foot had been badly burned. * * * As a result of the burn plaintiff's toe was amputated on July 5, 1933, and on August 23, 1933, his leg." The burn is thus squarely alleged to be the direct cause of the disabilities sued for. It fairly appears to be, not the result of any accidental means, but of a means deliberately used. If an accident at all, it was an accident caused directly or indirectly by medical treatment prescribed by the physician. The burn was not the direct or natural consequence either of the ulcer or the lancing of it, but of the use of heat as a curative agent. The excess of heat is like an overdose of a prescribed drug ignorantly taken by a patient, the effect of which is held to be the result of medical treatment under policies such as this one. Bayless v. Travelers' Ins. Co., 2 Fed.Cas. 1077, No. 1,138, reversed on other grounds Baylis v. Travelers' Ins. Co., 113 U.S. 316, 5 S.Ct. 494, 28 L.Ed. 989; New Amsterdam Casualty Co. v. Perryman, 162 Miss. 864, 140 So. 342. This policy declines to insure against an accident or an injury which is the direct or indirect result of medical treatment. The plaintiff has not suffered a casualty covered by his insurance.

Judgment affirmed.

---

[1] The difference is discussed in Davis v. Jefferson Standard Life Insurance Co. (C.C.A.) 73 F.(2d) 330, 96 A.L.R. 599, and Travelers' Protective Ass'n v. Davis (C.C.A.) 67 F.(2d) 260.