GIULIO MANGIERI, PETITIONER-APPELLANT, v. SPRING TOOL CO., RESPONDENT-APPELLEE.

Union County Court
Law Division

Decided June 6, 1960.

Mr. *Herbert Drucker* argued the cause for petitioner-appellant (*Messrs. Rokos & Drucker,* attorneys).

Mr. *Isidor Kalisch* argued the cause for respondent-respondent.

BARGER, J. C. C. This is a workmen's compensation appeal. The petition was dismissed in the Division because it was not timely filed and the petitioner appeals.

It is stipulated that the petitioner on March 10, 1955 was employed by the respondent at a weekly wage of $66 and therefore would be entitled under a determination in his favor to a compensation rate of $30 a week.

The petitioner testified that in May of 1955, the record otherwise establishing the date as March 10, 1955, he was delivering, in his employment as a truck driver for the respondent, an exceptionally heavy steel mold at a location in Hoboken, New Jersey. In view of the size and weight of the mold three men, employed by the company to which the mold was being delivered, were assisting him in unloading the mold from the truck bed onto a delivery platform and it was being lifted four or five inches. The mold is described generally as a heavy steel mold, however, no detailed description or estimate of its weight is indicated by the record. At the time the petitioner, assisted by the other three men, was unloading the mold from the truck, and while lifting it he felt something snap in his back and experienced a severe sharp pain in the lower left region of the back and he could not straighten up. Present at the time and observing the unloading of the mold was a person described by the petitioner as one of the bosses or partners of the respondent company, a Mr. Stephen Kucserka.

The petitioner could not recall any medical treatment on the day of the accident; however, the record indicates that

he did see Dr. McLaughlin, the respondent's physician, on the date of the accident and for a period from that date to March 25, 1955, and almost on a daily basis during this period. He received diathermy and heat treatments about twice a week and a corset-type belt was prescribed. The petitioner wore the belt until about January 11, 1956, and would from time to time have pain in the lower back and experience difficulty in straightening up. It is apparent from the evidence that the petitioner suffered an injury to the lumbar muscles, resulting in a myositis, with a scoliosis to the left, and which was superimposed, as an aggravation thereof, upon previous back pathology dating from about 1946.

On December 28, 1955 the petitioner suffered a recurrent myositis of the lumbar muscles of the back, at which time he was wearing the corset-type belt which had been prescribed by Dr. McLaughlin. Some time after that date Dr. McLaughlin prescribed a new brace. A mold was made of petitioner's back and this brace secured from the supplier on January 11, 1956. Petitioner then returned to see Dr. McLaughlin on January 13, 1956 so that the doctor could check the fitting of this brace. At this visit the petitioner was given specific instructions by Dr. McLaughlin to wear the new brace faithfully for a period of about six months, except when in bed, and then to gradually dispense with its use except when doing other than light work. The brace was paid for by the respondent, and the petitioner testified that he faithfully wore the brace for the six-month period mentioned, and thereafter occasionally. The visit on January 13, 1956 to Dr. McLaughlin was the last visitation of the petitioner to that physician.

The petitioner continued to work for the respondent until January 10, 1958, without incident in the employment, although he did testify that he lost a day occasionally and that when hard work was involved he would wear the brace, although for the period of his employment after the accident he was generally assigned light duties.

On January 11, 1958, while he was wearing the brace, and not in the course of his employment, he bent down to unloosen some snow chains on his car and he was unable to rise because of acute pain. He was at that time assisted to his home and his wife called a Dr. Schultz, recommended by a friend. Dr. Schultz recommended his admission to Overlook Hospital and he was admitted on January 27, 1958, and thereafter Dr. Schultz performed a spinal fusion. Petitioner further testified that before being admitted to the hospital he visited the New Jersey Manufacturers Insurance Company Clinic in Hillside, New Jersey, and informed someone at the clinic that an operation was needed upon the recommendation of Dr. Schultz. He requested help, which was refused. The insurance company mentioned was the compensation carrier of the respondent. The petitioner was released by Dr. Schultz for return to employment in May of 1958.

The petitioner now complains of a pulling sensation in the lower left region of the back when standing for any extended period of time, and upon excessive bending the same sensation occurs with severe pain. Upon arising in the morning there is a general stiffness in the lower back, and in performing any heavy work the brace must be worn. He also complains of general nervousness and inability to sleep well.

This court concurs in the findings of fact of the Deputy Director.

The petition in this case was filed on February 17, 1958, more than two years after the last visitation of the petitioner to Dr. McLaughlin, the physician of the respondent, and which visitation occurred on January 13, 1956. However, it was filed within two years of the termination date of the six-month period during which the petitioner wore the brace as prescribed and advised by Dr. McLaughlin. That period expired July 13, 1958.

The Deputy Director found that the statutory requirement of *R. S.* 34:15–51 was not complied with, in that the peti-

tion was not timely filed because the petition was not filed within two years of the date on which the last compensation was paid, being the medical treatment furnished by the respondent on January 13, 1956, and on motion dismissed the petition.

The sole question for this court to determine in this case is whether the wearing of the prescribed brace for the prescribed six-month period, terminating about July 13, 1956, is medical treatment and thus part payment of compensation resulting in the petition's being timely filed, that is, within two years of the last date on which such part payment of compensation occurred.

The courts of this State, under the cases hereinafter cited, have held that the furnishing of medical treatment by the respondent is part payment of compensation. The statute cited, among other periods, provides as one that the petition may be filed within two years from the date of the last payment of compensation. *R. S.* 34:15-51; *Oldfield v. New Jersey Realty Co.,* 1 *N. J.* 63 (1948); *Sampson v. Thornton,* 8 *N. J.* 415 (1952); *Pfahler v. Eclipse Pioneer Div. of Bendix Aviation Corp.,* 21 *N. J.* 486 (1956). However, a mere medical examination to determine whether a compensable injury exists is not medical treatment within this rule, and the cited cases so hold—also cited therein are *Hester v. Ford,* 221 *Ala.* 592, 130 *So.* 203 (*Sup. Ct.* 1930); *Barkerding v. Aetna Life Insurance Co.,* 82 *F. 2d* 358 (5 *Cir.* 1936).

*Pfahler v. Eclipse Pioneer Div. of Bendix Aviation Corp., supra,* sets forth the following definition of medical and surgical treatment:

" 'Treatment' is a broad term covering all steps taken to effect a cure of the injury or disease. It includes examination and diagnosis as well as application of remedies."

In the same case the dissenting opinion defines it in the following language:

" 'Medical and surgical treatment' signify 'what is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it. It includes the things done by the patient to carry out specific directions given for these ends by a physician.' "

There is no question that under the cited cases the visit of the petitioner to the office of the physician of the respondent on January 13, 1956 was within the defined term "medical treatment" and therefore a part payment on account of compensation by the respondent. However, the petition was not filed within two years of that date, so that insofar as that treatment was concerned the petition was not timely filed. The court must next direct its consideration as to whether the six-month period thereafter, during which period the prescribed brace was worn by the petitioner as prescribed, falls within the term "medical treatment" under the definitions indicated, and as such construed to be part payment of compensation which would result in the timely filing of the petition.

One can visualize in one's mind many situations relating to the prescribing of remedies or the furnishing of aids or devices, of one kind or another, in the treatment, correction or alleviation of a physical condition, either of a temporary or permanent character; one such being the furnishing of an infra-red lamp prescribed and furnished, as indicated in *Cestone v. Wylie; The Youngstown Sheet & Tube Co.*, 169 *Ohio St.* 182, 158 *N. E. 2d* 520, 525 (*Sup. Ct.* 1959), in regard to which the court comments:

"Appellee has, however, clearly failed here to establish that the infra-red lamp was given for curative purposes, as the testimony relates only to the palliative effect of the lamp treatments in relaxing muscles and relieving pain. Certainly if a doctor once recommended aspirin to a patient for headaches, it could not be claimed by such patient that every use of aspirin by him thereafter was under the treatment and direction of such doctor. By the same token, similar comparison may be drawn to the use of such items as electric heating pads, water bottles, ice packs, ultraviolet-ray lamps or any other commonly accepted items for home treatment for ailments. All these items are recognized as being in the class of palliatives most of the time rather than cures."

The court determined that as a matter of law the injured employee had not proven that the use of the lamp referred to was intended as a cure but, as indicated in the language of the decision, rather as a palliative for relieving and relaxing purposes only and not under the direction of the physician. The cited case also refers to a treatment definition similar to that used in *Pfahler v. Eclipse Pioneer Div. of Bendix Aviation Corp., supra,* and adopts the cure test referred to in the definitions.

In the cited decisions there is included as part of the definitions the words "application of remedies" and "seeking to alleviate or cure it." It is common knowledge that in the course of an illness or other disability many kinds and forms of remedies, some being aids or devices, may be prescribed as a part of the medical or surgical treatment in an attempt to arrest the illness or reduce the disability or effect a cure, as contrasted with and to be distinguished from those aids or devices prescribed to reduce the effect of or correct a condition or disability which has become permanent in character and to be used without any direction, supervision, indication or designation of a fixed or determinable period of time, and in some cases for the natural life of the individual involved; for instance, such aids and devices as medicines of one kind or another, eyeglasses, artificial limbs and the like, and which are prescribed not for the purpose of effecting a cure but rather to relieve, relax or reduce the total effect of a fixed permanent illness or disability, and with a somewhat permanent use contemplated. The use of the first mentioned remedies, under specific instructions, to aid and assist in curing, is apparently what is referred to in the given language of the definitions. One must, as indicated, distinguish those from the aids and devices prescribed under the second group mentioned in order to alleviate or assist in the improvement or correction of an established permanent condition and having a palliative effect rather than a curing effect. In order to qualify as part payment of compensation it appears that such treatment must, of course,

be furnished by the employer, and it must be a prescribed treatment under specific instructions for the purpose of effecting a cure and to be used for some determinable period of time as referred to in the cited cases. The term "medical treatment" is a very broad term. The definition set forth in the opinion in *Pfahler v. Eclipse Pioneer Div. of Bendix Aviation Corp., supra,* was apparently taken from *Black's Law Dictionary (4th ed.), p.* 1673, where treatment is defined in similar language, citing *Hester v. Ford, supra,* and *Kirschner v. Equitable Life Assur. Soc. of U. S.,* 157 *Misc.* 635, 284 *N. Y. S.* 506 *(Mun. Ct.* 1935).

The general dictionary definition of remedy is: "Any medicine or application which puts an end to disease and restores health; also one that relieves, but does not necessarily end a marked condition," *Webster's New Collegiate Dictionary.* Also medically a remedy is defined as: "Anything that cures, palliates or prevents disease," *The American Illustrated Medical Dictionary (16th ed., Dorland).*

This court, as indicated, concurs in the finding of facts by the Deputy Director, but it cannot concur in his application of the law thereto. It appears to this court, as a result of the reasoning in the above authorities, that the wearing of the brace by the petitioner, under the specific instructions of the physician, for the fixed remedial period prescribed by the physician of the respondent was a remedy, that is, an attempt to cure the back condition complained of, and was "medical treatment" within the language of the definitions thereof, and therefore became part payment of compensation by the respondent, such payment continuing to about July 13, 1956, and brings the filing of the petition on February 17, 1958 within the two-year period as required by the statute, and therefore the filing of the petition was timely.

The petitioner further claims that because of the conduct of the respondent he was lulled into inaction and that therefore there is an estoppel resulting from the conduct of the respondent in furnishing such treatment. The record

does not substantiate this claim of the petitioner. There is no explanation in the record of why the petitioner permitted the time period concerned to pass, nor any indication that he was guided by or acted in any manner whatsoever as a result of any act, statement or conduct on the part of the respondent. The record does not indicate any misguiding or misleading on the part of the respondent, and no estoppel by matter *in pais.*

The dismissal of the petition is reversed and the cause is remanded to the Division for further proceedings under the petition and answer filed and further findings of fact and law thereon.