Lorraine REID, Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,
a corporation, Defendant.

No. 77–1035.

United States District Court,
S. D. Illinois, N. D.

Nov. 23, 1977.

Joseph R. Napoli, Peoria, Ill., for plaintiff.

Stephen S. Buckley and Richard E. Quinn, Peoria, Ill., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

Plaintiff is the widow of Bernard S. Reid and the beneficiary eligible to receive any accidental death benefits under a policy issued by defendant. That the policy was in effect when said Bernard S. Reid died is stipulated, and it is agreed that the only questions involved on cross-motions for summary judgment are the questions of law, under the stipulated circumstances, whether his fatal injury was "*caused by violent, external and accidental means,*" and, if so, whether such injury was excluded from coverage as "*caused or contributed to by, or as a consequence of, * * * medical or surgical treatment,*" even though the proximate or precipitating cause of loss is accidental bodily injury. If coverage is afforded by the policy, it is stipulated that plaintiff is entitled to judgment in the sum of $117,368 plus costs of suit.[1]

The facts are that Bernard S. Reid, while normally recuperating from surgery performed for non-accidental ailments, was erroneously administered intravenously a drug known as succinylcholine, instead of a normal saline solution, as a carrier for an intended antibiotic known as keflin. After two injections of correct fluids, at 10:42 a. m. and 4:00 p. m., respectively, the error in ingredients was made by the nurse on the

1. Allowance of plaintiff's attorney's fees on a theory that defendant's failure to pay was "vexatious and without just cause" is not justified.

9:40 p. m. dosage, shortly after which the patient went into respiratory arrest, from which he never fully recovered, and he died five days later. It is agreed that this erroneous injection of succinylcholine, a muscle relaxant, was the proximate cause of death.

Both sides concede that this drug was given in error and not intentionally. Plaintiff argues, however, that the erroneous drug administration was clearly violent, external and accidental, and was obviously not medical or surgical treatment, but the opposite thereof, which would establish liability. Defendant argues that there was clearly no violence, that the harm was done internally, that the "means" of treatment was as prescribed rather than accidental, the error being in the drug given, and that obviously the error occurred in the course of medical treatment, which clearly precludes liability. Both sides have provided scholarly briefs and strong arguments.

■ It is clear that under the rule of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the substantive law of Illinois controls on the matter of interpretation of an insurance policy, and *Christ v. Pacific Mutual Life Insurance Company*, 312 Ill. 525, 144 N.E. 161 (1924), appears conclusive on the first issue in this case. There, the Supreme Court of Illinois decided that a death from typhoid fever brought about by drinking of water containing typhoid bacilli, accidentally, because of lack of knowledge of the pollution, although the drinking of the water was intentional, was covered by a policy providing indemnity for death by "external, violent and accidental means." Defendant does not seek to distinguish this authority which seems almost precisely in point and controlling on this issue. It would appear that the instant policy must be held to cover the death of Bernard Reid, unless the exception involving medical and surgical treatment is effective to preclude such coverage.

On this score there is no such clear-cut Illinois authority, but it seems clear, on careful analysis of a similar type as that employed by the Illinois Supreme Court, to reach the conclusions above noted, that the medical exclusion does apply to what happened here and that coverage is precluded thereby.

There is no problem over the burden of proof, which is argued somewhat, because what happened is perfectly clear. There can really be no doubt that the death here involved was a direct consequence of medical treatment, i. e., the administration of keflin to control possible post-surgical infection, as prescribed by the physician. The accidental use of the killer drug as a carrier of the intended drug, in place of normal saline solution as such carrier, whether such use was negligence amounting to medical malpractice, or an unavoidable act of God, or something in between, though obviously not prescribed, would not have occurred but for the treatment, and thus was a consequence thereof. Even though it be considered that the accidental death was not caused or contributed to by the intended medical treatment, it was caused by the "accident" which occurred in the course of administering medical treatment.

No controlling precedents have been cited to the court on this issue and none have been found. Defendant cites as controlling *Baylis v. Travelers' Insurance Company*, 113 U.S. 316, 5 S.Ct. 494, 28 L.Ed. 989 (1885), which quotes, without criticism, a lower court holding that death from taking a lethal quantity of opium, when a smaller dose had been prescribed, was caused by medical treatment; but the Court reversed the lower court judgment on other grounds for a new trial. Thus, this case is not a controlling decision, though the reasoning is persuasive.

Defendant also cites several other overdose and medical negligence cases in which medical exclusion clauses in accident policies were held to apply. *See Barkerding v. Aetna Life Insurance Company*, 82 F.2d 358 (5th Cir. 1936); *Order of United Commercial Travelers v. Shane*, 64 F.2d 55 (8th Cir. 1933); *Westmoreland v. Preferred Accident Insurance Company*, 75 F. 244 (5th Cir. 1896); *Pittman v. Commercial Travelers' Eastern Accident Association*, 284 Mass. 467, 188 N.E. 241 (1933); *New Amsterdam*

Casualty Company v. Perryman, 162 Miss. 864, 140 So. 342 (1932); and Flint v. Travelers' Insurance Company, 43 S.W. 1079 (Tex. Civ.App.1898).

Plaintiff would distinguish these cases as all involving: (1) a drug administered for a valid medical purpose; (2) administration by a doctor or the patient himself; and (3) a part of normal treatment. Such distinctions are of no significance and they overlook the fact that here the prescribed antibiotic (keflin) was administered by the nurse as planned and directed by the doctor, the error being in the liquid carrier therefor.

Plaintiff also cites cases involving other exclusionary clauses in accident policies which were found inapplicable under the circumstances before the court in those cases. Such is Scanlan v. Metropolitan Life Insurance Company, 93 F.2d 942 (7th Cir. 1937). There, the policy excepted liability if death was caused wholly or partly by bodily infirmity. It was properly held that this did not except coverage where a non-fatal bodily condition was rendered more serious by an accident and therefore may have caused or contributed to cause death. The court observed, at page 946: "If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident." That logic contributes nothing to proper understanding of the exclusion of medical treatment here.

Likewise, with a similar exclusion in Aetna v. Brand, 265 F. 6 (1920), the court found an accidental pricking of an artery during a hernia operation was no more caused by the hernia condition than could the hernia have been said to have caused an injury arising from a ceiling falling in the hospital on the way to or from the operating room, or of a mad man shooting the patient while he is undergoing medical or surgical treatment, which plaintiff would analogize. It may be conceded that the mere fact that medical or surgical treatment is going on at the time does not preclude liability for such an acci-

dental death; but quite obviously in such cases the death could not be said to have been as a consequence of the medical treatment, as here it must, to give effect to the clear language of the exclusion.

Courts are obligated to give effect to clear language of insurance policies, even though ambiguities are to be construed against the insurance carrier. Hooker v. New York Life Insurance Co., 161 F.2d 852 (7th Cir. 1947). As stated above, objective consideration seems to this court to find inescapable the conclusion that Bernard Reid died as a direct consequence of medical treatment, even though the proximate or precipitating cause of death must also be recognized as having been the accidental injection of a lethal drug.

Accordingly, IT IS ORDERED that plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is ALLOWED.

IT IS FURTHER ORDERED that judgment enter for defendant.