**Cynthia M. PICKARD, Plaintiff,**

v.

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, a California corporation, Defendant.**

**No. 86–CV–3673–DT.**

United States District Court, E.D. Michigan, S.D.

July 13, 1987.

Ernest J. Essad, Jr., Nora, Hemming, Essad & Polaczyk, Plymouth, Mich., for plaintiff.

Robert A. LaBelle, Dickinson, Wright, Moon, Van Dusen & Freeman, Bloomfield Hills, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

This is a declaratory judgment action for accident benefits under an employee life insurance policy. The facts are uncontroverted and both parties agree that the case is ripe for summary disposition.

Plaintiff's decedent, Thomas W. Pickard, was admitted to a hospital for the treatment of, among other things, ulcerative colitis. He was scheduled to undergo a colonoscopy. In preparation for that he was given a liter of potassium chloride 20% solution to drink instead of the GoLytely Solution which was intended. As a result of drinking the wrong solution he died.

The insurance policy which covered him had an accidental death benefit policy which excluded payment of that benefit "if the individual's loss shall directly or wholly result from: . . . (c) bodily or mental infirmity, disease of any kind, or as a result of medical or surgical treatment therefor. . . ."

Plaintiff argues that "Mr. Pickard's death however, was not as a result of medical or surgical treatment for bodily infirmity or disease but rather as a result of gross

negligence." She points out that "[t]he potassium chloride ingested was not intended, was not required, was not prescribed, nor was it given in conjunction with any drug which was supposed to be given." Defendant relies on two cases in which similar accidents were excluded from coverage: *Reid v. Aetna Life Insurance Co.*, 440 F.Supp. 1182 (S.D.Ill.1977) (death due to the accidental use of a killer drug as a carrier of the intended drug in the place of a normal saline solution); *Whetsell v. Mutual Life Insurance Co. of New York*, 669 F.2d 955 (4th Cir.1982) (the insured died as the result of an infection caused by the use of an infected needle used in administering treatment). Plaintiff contends that this case is different because no proper drug or treatment was administered. She cites only one case, however, in which any medically-related mishap was found not to be excluded by a clause similar to the one at issue. That case is one in which the Court held that death due to the dislodging of an endotracheal tube which had been placed in the patient's throat was due, not to an administration of treatment, but to a cessation of treatment. *Mayfield v. Metropolitan Life*, 585 S.W.2d 163 (Mo.Ct.App.1979).

None of these cases are Michigan cases, and the parties concede that the Michigan courts have not addressed this issue. Nonetheless, both the clear language of the policy and the weight of authority suggest that the policy was meant to exclude this kind of mishap. See cases cited in *Whetsell* where the Court (apparently unaware of *Mayfield*) stated that "[i]t appears that every court that has considered similar exclusionary clauses has held such provisions to exclude from coverage death caused by various mishaps occurring during the course of medical treatment." *Whetsell* at 956, fn. 1.

While plaintiff makes much of the fact that there is no medical reason ever to prescribe as treatment the drinking of the potassium chloride solution and of the fact that the patient administered it himself by drinking it, the fact remains that it was given him in preparation for a diagnostic procedure undertaken as part of his treatment and that he was told to drink it by a medical person. If this case is not covered by the exclusion, the exclusionary provision would tend to become meaningless. "Death is never caused by medical treatment absent some misdiagnosis or mistake." *Whetsell* at 957.

Plaintiff also argues that the policy language is ambiguous and should therefore be construed against the insurer. The Court does not agree, however, that the term "medical treatment" is ambiguous.

Therefore, IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment be DENIED as to Counts I (breach of contract) and III (wrongful refusal to pay benefits under the insurance policy), and that defendant's Motion for Summary Judgment be GRANTED as to Counts I and III.

Count II of plaintiff's complaint also alleges a violation of M.C.L.A. § 500.4430(1). Defendant argues, first, that they did not violate the law. Plaintiff counters that vigorously. Even assuming, as we must, in considering defendant's Motion for Summary Judgment, that plaintiff's version of the facts is correct, M.C.L.A. § 500.3468(2) provides:

> Construction of noncomplying policies and provisions. A policy delivered or issued for delivery to any person in this state in violation of this insurance code shall be held valid but shall be construed as provided in this code. When any provision in a policy subject to this chapter is in conflict with any provision of this chapter, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of this chapter.

Plaintiff has failed to show any reason why this provision should not be applied to this situation. Nor has plaintiff pointed to any provision of the insurance code which conflicts with the clause in issue. Therefore, defendant's Motion for Summary Judgment is GRANTED as to Count II as well.

Counts IV and V allege an unfair trade practice in violation of M.C.L.A. § 500.2006 and a violation of the Michigan Consumer

Protection Act, M.C.L.A. § 445.901 *et seq.*, respectively, and are predicated on an alleged wrongful refusal to pay. Given the Court's disposition of Counts I and III there is no longer any basis for these counts and defendant's Motion for Summary Judgment is also GRANTED as to them.

Therefore, IT IS ORDERED that this case be DISMISSED and judgment be entered for defendant.

So ordered.