JEFFREY LITMAN, Plaintiff-Appellant, v. MONUMENTAL LIFE INSURANCE COMPANY, Defendant-Appellee.

First District (5th Division)   No. 1—96—2460

Opinion filed June 13, 1997.

Scariano, Kula, Ellch & Himes, Chartered, of Chicago Heights (Anthony G. Scariano and Janet L. Schweiters, of counsel), for appellant.

Sonnenschein, Nath & Rosenthal, of Chicago (Alan H. Silberman and Jill Thompson Calian, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Jeffrey Litman, appeals from a summary judgment for defendant, Monumental Life Insurance Company (Monumental). Plaintiff's wife, Lyndie Sue Litman (Lyndie), was insured under an accidental death policy (Policy) issued by Monumental which provided that Monumental will pay a death benefit to the insured's named beneficiary, if: (1) death occurs as a direct result of an injury; and (2) death occurs within 90 days of the accident causing the injury. A "medical treatment" exclusionary clause in the Policy stated that Monumental

"will not pay a benefit for a loss which is caused by, results from, or contributed to by:

\* \* \*

(5) Sickness or its medical or surgical treatment, including diagnosis."

In June of 1993, Lyndie had surgery for ulcerated colitis; an illeanal anastomosis or "J pouch" was created to avoid the need for an ostomy bag. On Thanksgiving Day, 1994, Lyndie began to experience pain and was taken to the hospital where emergency surgery was performed to remove scar tissue from the previous surgery which had created a bowel obstruction. The scar tissue was removed. Exploratory surgery two days later indicated that a 10- to 12-inch segment of intestine did not have to be removed. Lyndie recovered from her surgeries and returned home five days later.

During the second week of December 1994, Lyndie's stitches were removed. A few days later, Lyndie began experiencing abdominal pain and was admitted to the hospital. On Wednesday, December 14, 1994, a feeding tube known as a Hickman line was inserted and was X-rayed to insure that it had been positioned properly. On Thursday, the Hickman line was utilized to provide nourishment to Lyndie for her surgery on the following Tuesday.

On the morning of December 20, 1994, Lyndie's third surgery was successful and the blocked segment was removed. Lyndie returned from the recovery room around 3 p.m. and was doing fine when plaintiff left at 10 p.m. At 7:15 the next morning, however, plaintiff was notified by the hospital that Lyndie was having a major

heart attack. The Hickman line had shifted and pierced through the superior vena cava and perforated the lateral wall of the right atrium, causing cardiac arrest. Fluid from the Hickman line had filled Lyndie's pericardial sac, causing death at 8 a.m.

Monumental denied coverage based upon its "medical treatment" exclusionary clause and plaintiff thereafter filed a complaint seeking a declaration that Monumental owed him death benefits as the named beneficiary under the Policy. Following cross-motions for summary judgment, the circuit court granted summary judgment for Monumental, finding that the "medical treatment" exclusionary clause applied to bar coverage. Plaintiff appeals, asserting the court erred in interpreting the accident as a result of medical treatment. Monumental contends the accident that caused Lyndie's death occurred in the course of, and because of, the medical treatment she was undergoing for her bowel obstruction.

■ A motion for summary judgment will be granted only when the pleadings, depositions, admissions, and affidavits on file, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1994). This court reviews summary judgment orders *de novo*. *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 241, 668 N.E.2d 59 (1996).

■ An accident is " 'an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character.' " *Indiana Insurance Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 929, 615 N.E.2d 70 (1993), quoting *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157 (1980).

■ Plaintiff contends that Lyndie's death resulted from an accident, not medical treatment, and the circuit court ignored a long line of Illinois cases that has determined that exclusionary clauses do not preclude recovery for accidental death, even during the course of medical treatment, if the accident, and not the treatment, is the proximate cause of death. See *Carlson v. New York Life Insurance Co.*, 76 Ill. App. 2d 187, 222 N.E.2d 363 (1966) (*Carlson*).

*Carlson*, however, did not address the issue presented in the instant case, but was predicated upon concerns regarding preexisting illnesses and proximate cause. In *Carlson*, plaintiff was insured " 'against specified losses resulting directly, and independently of all other causes, from accidental bodily injury.' " 76 Ill. App. 2d at 190. Excluded from coverage was any loss caused by illness or disease. 76 Ill. App. 2d at 191. Plaintiff got dust and splinters in his eye while using an electric sander; as a result, his latent schizophrenia was

activated. 76 Ill. App. 2d at 193-94. A jury found for plaintiff and defendant appealed, contending it was not liable under its policy "unless the accidental injury is the sole and independent cause of the resulting disability; and that if the loss is caused in part by the preexisting illness—the latent schizophrenia—there can be no recovery." 76 Ill. App. 2d at 194. The *Carlson* court concluded that plaintiff's preexisting illness, although contributing to the loss resulting from the accident, did not relieve the insurer of liability where the accident was the proximate cause of the loss. 76 Ill. App. 2d at 196. Consequently, plaintiff was not entitled to a directed verdict or judgment notwithstanding the verdict. Unlike *Carlson*, the Policy in the present case contained a "medical treatment" exclusionary clause. Moreover, the accident in *Carlson*, getting foreign matter in the eye, was not caused by the illness. *Carlson* does not persuade.

Similarly, in *Vollrath v. Central Life Insurance Co.*, 243 Ill. App. 181 (1926) (*Vollrath*), relied upon by plaintiff, the court discussed the issue of proximate causation with a preexisting illness. In *Vollrath*, the insured died from an anesthetic administered during the course of a tonsillectomy. The policy excluded death " 'from physical or mental infirmity, or from illness or disease of any kind.' " 243 Ill. App. at 183. The insurer contended that the insured's death was the result of his own physical condition at the time of the operation. The issue was whether the insured's death was accidental as a matter of law.

In the present case, there is no dispute that Lyndie's death was accidental. Unlike *Carlson* and *Vollrath*, the instant case does not turn on concerns of proximate cause and a preexisting illness. Rather, the focus here is on the "medical treatment" exclusionary clause, absent in *Carlson* and *Vollrath*, which prohibits coverage for "[s]ickness or its medical or surgical treatment." The issue is whether or not Lyndie's death occurred because of medical treatment.

*Reid v. Aetna Life Insurance Co.*, 440 F. Supp. 1182 (S.D. Ill. 1977), informs the present case. There, plaintiff, who was insured under a policy with a medical treatment exclusionary clause, was recuperating from surgery "performed for non-accidental ailments" and was administered intravenously the wrong medication and died as a result. 440 F. Supp. at 1182. Applying Illinois law, the court reasoned that the death "was a direct consequence of medical treatment" and that

> "[t]he accidental use of the killer drug as a carrier of the intended drug, in place of normal saline solution as such carrier, whether such use was negligence amounting to medical malpractice, or an unavoidable act of God, or something in between, though obvi-

ously not prescribed, would not have occurred but for the treatment, and thus was a consequence thereof. Even though it be considered that the accidental death was not caused or contributed to by the intended medical treatment, it was caused by the 'accident' which occurred in the course of administering medical treatment." 440 F. Supp. at 1183.

Plaintiff asserts *Reid* is distinguishable because the Hickman line here was not inserted as a treatment for ulcerated colitis or the obstructed bowel. Plaintiff maintains that Lyndie was able to take nourishment orally and the Hickman line was inserted during a medical procedure that was completed almost a week before her death. According to plaintiff, *Reid* would govern here only if Lyndie's heart had been perforated *during* insertion of the Hickman line. Monumental claims that plaintiff's contention is hypertechnical and unacceptable for construing contracts. Monumental submits that, while the medical procedure of inserting the Hickman line was completed, Lyndie's medical treatment did not cease at that moment.

Although the Hickman line did not perforate Lyndie's heart at the moment of insertion by a physician, it was introduced in order to prepare Lyndie for surgery and was used continuously to nourish her. Lyndie's medical treatment did not terminate once the medical procedure of installing the Hickman line was completed; rather, the use of the Hickman line was an ongoing process that constituted an important part of her medical treatment. See generally *Provident Life & Accident Insurance Co. v. Hutson*, 305 S.W.2d 837, 839 (Tex. Civ. App. 1957). Since Monumental's Policy expressly precludes coverage for losses caused by medical treatment, the exclusionary clause applies to bar coverage here.

Several cases support this conclusion. In *Whetsell v. Mutual Life Insurance Co.*, 669 F.2d 955 (4th Cir. 1982), the insured was intravenously administered a saline solution. The needle was infected, however, and the insured contracted bacterial endocarditis from which he died. In construing a medical treatment exclusionary clause, the court noted "*that every court that has considered similar exclusionary clauses has held such provisions to exclude from coverage death caused by various mishaps occurring during the course of medical treatment.*" (Emphasis added.) 669 F.2d at 956. The *Whetsell* court relied upon the decision in *Reid*, noting that a contrary conclusion "would render the exclusionary provision meaningless." 669 F.2d at 957; see also *Hammer v. Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 590, 573 A.2d 699, 707 (1990) (finding that a medical treatment exclusionary clause barred coverage for insured's losses suffered after a nutrition line that had been installed disconnected

because "[t]he only reasonable interpretation of the exclusionary provision is that it specifically excludes \*\*\* accidents caused by or resulting from 'medical or surgical treatment' ").

    *Senkier v. Hartford Life & Accident Insurance Co.*, 948 F.2d 1050 (7th Cir. 1991) (*Senkier*), is factually indistinguishable from the present case. In *Senkier*, the insured suffered from Crohn's disease and "was admitted to a hospital with a tentative diagnosis of intestinal obstruction." 948 F.2d at 1051. According to standard procedure for treating Crohn's, a catheter was inserted into a vein beneath the insured's clavicle to administer nourishment intravenously. 948 F.2d at 1051. Subsequently, the catheter moved from its original position and punctured the heart. The puncture was listed as the cause of death on the insured's death certificate, "but the final certificate listed marked nutritional deficiency resulting from Crohn's as the cause of death." 948 F.2d at 1051. The *Senkier* court noted:

> "[T]he plaintiff must lose because a policy of accident insurance does not reach iatrogenic injuries, that is, injuries resulting from medical treatment. Any time one undergoes a medical procedure there is a risk that the procedure will inflict an injury, illustrating the adage that 'the cure is worse than the disease.' The surgeon might nick an artery; might in fusing two vertebrae to correct a disk problem cause paraplegia; might in removing a tumor from the patient's neck sever a nerve, so that the patient could never hold his head upright again. A simple injection will, in a tiny fraction of cases, induce paralysis. An injection of penicillin could kill a person allergic to the drug. A blood transfusion can infect a patient with hepatitis or AIDS. *All these injuries are accidental in the sense of unintended and infrequent. But they are not 'accidents' as the term is used in insurance policies for accidental injuries. The term is used to carve out physical injuries not caused by illness from those that are so caused, and while injuries caused not by the illness itself could be put in either bin, the normal understanding is that they belong with illness, not with accident.*" (Emphasis added.) 948 F.2d at 1051-52.

In rejecting plaintiff's arguments, the *Senkier* court reasoned that "[w]hen you die from the standard complications of standard medical treatments you don't, it seems to us, die in or because of an accident; your death is the result of illness." 948 F.2d at 1053.

    Plaintiff here contends *Senkier* should not control this court's reasoning because it was brought under the Employee Retirement Income Security Act and decided under federal law. Plaintiff acknowledges, however, that this is a case of first impression in Illinois; accordingly, this court may look to decisions from other jurisdictions. See *Caterpillar, Inc. v. Aetna Casualty & Surety Co.*, 282

Ill. App. 3d 1065, 1072, 668 N.E.2d 1152 (1996); see also *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 727, 648 N.E.2d 1099 (1995); *Beard v. Mount Carroll Mutual Fire Insurance Co.*, 203 Ill. App. 3d 724, 729-30, 561 N.E.2d 116 (1990). Plaintiff also attempts to distinguish *Senkier* by noting that the use of a catheter is "standard treatment" for Crohn's disease sufferers whereas the Hickman line was used on Lyndie in order to prepare her for surgery. Although Lyndie did not require the Hickman line for the exact same reasons as plaintiff in *Senkier* needed a catheter, the Hickman line was nevertheless essential to Lyndie's well-being and recovery: it enabled Lyndie to undergo her third surgery in as many weeks. It is difficult to view the insertion of the Hickman line here as something other than medical treatment, that is, something "performed by a doctor or a surgeon on the body of the patient in the diagnosis of or in preparation for cure." *Provident Life*, 305 S.W.2d at 840; see also *Dinkowitz v. Prudential Insurance Co.*, 90 N.J. Super. 181, 216 A.2d 613 (Law Div. 1966).

Plaintiff contends that even if the accident occurred in combination with medical treatment, recovery is not precluded if the accidental injury, and not the treatment, was the proximate cause of death. Plaintiff's cited authorities do not involve medical treatment exclusionary clauses; rather, each involves an accident not causally related to a preexisting disease. Consequently, each is distinguishable from the present case. For instance, in *Wahls v. Aetna Life Insurance Co.*, 122 Ill. App. 3d 309, 461 N.E.2d 466 (1983), the insured, who had a long history of alcoholism, was found dead in her home with a fractured right ankle. A postmortem report stated that the " 'Death is considered to be related to Fatty Liver in association with Fracture of ankle bones and history of heavy use of Ethanol.' " 122 Ill. App. 3d at 310. The insurance policy at issue covered losses "resulting from 'accidental bodily injury ***, directly and independently of all other causes.' " 122 Ill. App. 3d at 310. Excluded from coverage were losses caused or contributed to by any illness or disease. 122 Ill. App. 3d at 310-11. The medical examiner and plaintiff's expert could not determine the cause of death although plaintiff's expert ruled out the fractured ankle. The court in *Wahls* concluded that a fact question remained as to whether the insured's death was accidental. *Wahls* is distinguishable because the excluded event, any illness or disease, did not cause the accident that contributed to the insured's death.

In *Leverich v. Mutual Life Insurance Co.*, 139 F. Supp. 862 (E.D. Ill. 1956), the insured, who had Parkinson's disease, sustained broken bones and contusions in an automobile accident and died of pneumonia while hospitalized. Coverage was not excluded by the policy,

which precluded recovery if death resulted directly or indirectly from disease or bodily or mental infirmity. 139 F. Supp. at 863. Similar to *Wahls*, the accident in *Leverich* was not caused by the excluded event. Moreover, the policy in *Leverich* did not contain a medical treatment exclusionary clause. See also *Connecticut General Life Insurance Co. v. Aguilar*, 579 F. Supp. 1201 (N.D. Ill. 1983); *Preston v. Aetna Life Insurance Co.*, 174 F.2d 10 (7th Cir. 1949).

■ Plaintiff next argues that, under Illinois law, nutrition and hydration are viewed differently from actual medical treatment, relying upon the Health Care Surrogate Act (755 ILCS 40/1 *et seq.* (West 1994)) and the Illinois Power of Attorney Act (755 ILCS 45/1—1 *et seq.* (West 1994)). Plaintiff does not assert that the term "medical treatment" is ambiguous and though provisions that limit or exclude coverage are to be construed liberally in favor of the insured and " 'most strongly against the insurer' " (*National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 122, 632 N.E.2d 1039 (1994), quoting *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 179, 370 N.E.2d 1044 (1977)), there is no basis here for concluding that the insertion of a Hickman line was not medical treatment. This decision is consistent with several cases that involved analogous circumstances. See *Reid v. Aetna Life Insurance Co.*, 440 F. Supp. 1182 (S.D. Ill. 1977); *Whetsell v. Mutual Life Insurance Co.*, 669 F.2d 955 (4th Cir. 1982); *Hammer v. Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 573 A.2d 699 (1990); *Senkier v. Hartford Life & Accident Insurance Co.*, 948 F.2d 1050 (7th Cir. 1991).

Accordingly, Monumental's medical treatment exclusionary clause bars coverage where Lyndie's death was caused by, resulted from, or was contributed to by medical treatment. The circuit court did not err in granting summary judgment for Monumental and, therefore, its judgment is affirmed.

Affirmed.

HOFFMAN and SOUTH, JJ., concur.