# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2021

Lyle W. Cayce
Clerk

No. 20-20165

Luis Lebron,

*Plaintiff—Appellant Cross-Appellee*,

*versus*

National Union Fire Insurance Company of Pittsburgh, Pennsylvania; AIG Claims, Incorporated;

*Defendants—Appellees Cross-Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-3935

Before Jones, Clement, and Graves, *Circuit Judges*.

Per Curiam:*

Plaintiff-appellant Luis Lebron appeals a district court's judgment upholding a denial of benefits under an accidental death insurance policy. We affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20165

I.

Luis worked as a mechanic for The Boeing Company when he purchased an accidental death insurance policy (the "Policy") for himself and his wife, Barbara, through Boeing's benefits plan. The Policy excludes coverage for death caused "in whole or in part" by "[i]llness, sickness, disease, bodily or mental infirmity, medical or surgical treatment (unless treating a covered injury), or bacterial or viral infection, regardless of how contracted (except when bacterial infection results from an accidental cut or wound or accidental food poisoning)." The plan delegates authority to defendant and cross-appellant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC") to determine benefit eligibility as the plan administrator. The Policy "is governed by the laws of Washington" to the extent not preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

Barbara was later diagnosed with end-stage renal disease associated with hypertensive cardiovascular disease, which required her to undergo regular dialysis treatment. To facilitate her treatment, doctors placed a dialysis catheter near her groin. Because Barbara had problems with blood clotting during her dialysis treatment, she was prescribed Warfarin, a blood thinner.

On December 11, 2017, Barbara died unexpectedly when she accidentally cut her dialysis catheter with scissors while changing a bandage around the catheter, causing her to bleed to death. Investigators ruled her death an accident; the medical examiner described the circumstances of Barbara's death as "indicative of the decedent inadvertently cutting across the ports of her inguinal dialysis catheter while attempting to change bandaging." The medical examiner concluded that Barbara's death was caused by "exsanguination from cut dialysis catheter placed for treatment of

end-stage renal disease associated with hypertensive cardiovascular disease."

Luis claimed benefits under the Policy and later submitted Barbara's death certificate. NUFIC concluded that Luis' claim was not covered under the Policy, in part because Barbara's death was at least partially caused by medical treatment. Luis appealed the denial and submitted the medical examiner's report and letters from two doctors, including one who had treated Barbara, stating that Barbara's death was an accident not attributable to "an expected medical complication." NUFIC's appeals board upheld the denial of benefits "because [Barbara's] injury did not result directly and independently of all other causes in her death." Lebron then sued NUFIC in district court, alleging ERISA violations.

Before the district court, the parties filed cross-motions for summary judgment on the administrative record. The district court referred the matter to a magistrate judge, who recommended upholding the denial of benefits. The magistrate judge reviewed the denial de novo but concluded that Luis was not entitled to benefits because Barbara's "changing of her bandage falls within the meaning of medical treatment in this Circuit, and [because] the accidental cutting of her inguinal catheter was associated with that medical treatment." All parties objected to the magistrate judge's recommended disposition: Luis objected to the merits conclusion, while the defendants objected to the magistrate judge's de novo review. The district court adopted the magistrate judge's recommended disposition in full, and this appeal and cross-appeal timely followed.

## II.

"Standard summary judgment rules control in ERISA cases." *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017) (citations omitted). De novo review is the "default" standard of review applicable to both factual and legal bases of ERISA benefits decisions unless

an ERISA plan contains a valid, lawful delegation of discretionary authority, in which case the decision is reviewed for abuse of discretion. *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 248 (5th Cir. 2018) (en banc). Although NUFIC cross-appeals—contesting the magistrate judge's decision that the Policy's discretionary clause is invalid under Texas law[1] and arguing that de novo review applies—we decline to address this issue because Luis' argument fails under both de novo review and abuse-of-discretion review.

### III.

The parties do not dispute that Barbara's death resulted from an accident and therefore would be covered but for the "medical or surgical treatment" exclusion. Accordingly, the issue is whether Barbara's actions in changing a bandage around her dialysis catheter constitute "medical or surgical treatment," which the Policy excludes from coverage. The Policy does not define "medical or surgical treatment."

"Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation" of the Policy provision at issue here. *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir. 2004). *See Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 331 (5th Cir. 2014). We may also apply analogous state law when such guidance is consistent with congressional policy concerns. *See Green*, 754 F.3d at 331 n.5. "When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists." *Sharpless*, 364 F.3d at 641. We "interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one." *Wegner v. Standard Ins. Co.*, 129 F.3d 814,

---

[1] Texas Insurance Code § 1701.062 bans insurers' use of discretionary clauses in Texas. *See Rittinger v. Healthy All. Ins. Co.*, 914 F.3d 952, 955 (5th Cir. 2018).

818 (5th Cir. 1997) (internal quotation marks omitted). "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of contra proferentum and construe the terms strictly in favor of the insured." *Id.* "An insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made," thus supporting contradictory results. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993).

The term "medical treatment" is unambiguous and has a generally accepted meaning, which we are bound to apply. *Wegner*, 129 F.3d at 818. Webster's Third New International Dictionary defines "medical treatment" as "the action or manner of treating a patient medically or surgically," and to "treat" is "to care for (as a patient or part of the body) medically." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2435 (3d ed. 2002). The word "treatment" thus is a "broad term covering all the steps taken to affect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." BLACK'S LAW DICTIONARY 1502 (6th ed. 1990). Barbara's actions in changing the bandages around her dialysis catheter fall under this broad term because, by changing her bandages in preparation for a dialysis appointment scheduled later that day, she was facilitating treatment for her disease.

Luis argues that the term "medical or surgical treatment" is nonetheless ambiguous because it is normally understood to encompass what a doctor or healthcare provider does to a patient, rather than covering what a patient does to herself. But in *Barkerding v. Aetna Life Insurance Company*, 82 F.2d 358 (5th Cir. 1936), this court defined "medical or surgical treatment" to include "the things done by the patient to carry out specific directions given for these ends by a physician." *Id.* at 359. Therefore, under our caselaw, the phrase does not turn on who is providing the treatment. Although Luis

argues that *Barkerding* is distinguishable because there is no evidence that her doctors instructed her to change her catheter bandages, the record reflects that it was not uncommon for Barbara to change bandages to better facilitate dialysis. Further, *Barkerding* and the exclusionary term's plain meaning dictate that, to be covered under the policy, the accident must result independently of medical treatment. That is not the case here. Barbara's tragic death is directly attributable to her medical treatment; she would not have died from exsanguination had her illness not necessitated treatment via a catheter and bandages to keep the catheter intact. Barbara's actions in changing the bandages around her catheter to prepare for dialysis treatment thus amount to "steps taken to affect a cure of" her renal disease, BLACK'S LAW DICTIONARY at 1502, and therefore her death was caused at least "in part by" medical treatment.

Moreover, courts uniformly apply the "medical treatment" exclusion where an accidental "mishap in the course of treatment" causes death because "the normal understanding" is that "injuries caused not by the illness itself but by the treatment of the illness" are excluded under policies similar to the one at issue in this case. *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1052-54 (7th Cir. 1991) (no coverage where patient suffering from Crohn's Disease had a catheter implanted, which later inexplicably shifted to puncture the patient's heart, causing death). *See, e.g.*, *Anderson-Tully Co. v. Pan Am. Life Ins. Co.*, No. 96-5348, 1997 WL 359079, at *1 (6th Cir. 1997) (unpublished) (no coverage where patient fell from hospital bed, dislodging arterial sheath and causing death); *Whetsell v. Mut. Life Ins. Co. of N.Y.*, 669 F.2d 955, 957 (4th Cir. 1982) (no coverage where death was caused by accidental use of contaminated IV to administer antibiotics). Cases in which a patient overdoses on prescribed medication or in which the insured is injured by a doctor's malpractice are analogous, and in those cases courts also uniformly conclude that the mishaps are caused by medical

treatment and, therefore, are excluded from coverage. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1228 (D. Idaho 2013) (insured's overdose on medication prescribed to treat mental illness not covered because it fell under policy exclusion for injury caused indirectly by medical treatment); *Wilson v. Bus. Men's Assurance Co.*, 181 F.2d 88, 89 (9th Cir. 1950) (medical treatment extended to drug prescribed for treating insured's ailment); *Pickard v. Transamerica Occidental Life Ins. Co.*, 663 F. Supp. 126, 127 (E.D. Mich. 1987) (death due to drinking wrong solution in preparation for colonoscopy was medical treatment under accidental death policy); *Reid v. Aetna Life Ins. Co.*, 440 F. Supp. 1182, 1183–84 (S.D. Ill. 1977) (accidental injection of lethal drug considered death caused by medical and surgical treatment). "It appears that every court that has considered similar exclusionary clauses has held such provisions to exclude from coverage death caused by various mishaps occurring during the course of medical treatment." *Whetsell*, 669 F.2d at 956 & n.1 (gathering numerous supporting cases).

Because the term "medical or surgical treatment" unambiguously covers Barbara's actions in changing her bandages in preparation for an upcoming dialysis treatment, there is no genuine issue of material fact that the Policy does not cover Barbara's death. We therefore AFFIRM the district court's judgment below.