Docket No. 103754.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

---

DAVID RICH, Appellant, v. PRINCIPAL LIFE INSURANCE
COMPANY, Appellee.

*Opinion filed September 20, 2007.*

JUSTICE FREEMAN delivered the judgment of the court, with
opinion.
Chief Justice Thomas and Justices Fitzgerald, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

Plaintiff, David Rich, brought an action in the circuit court of
Winnebago County against defendant, Principal Life Insurance
Company, for breach of an insurance contract. Defendant filed a
counterclaim against plaintiff seeking a declaratory judgment. Plaintiff
and defendant filed cross-motions for summary judgment in the
declaratory judgment action. The circuit court entered summary
judgment in favor of plaintiff. The appellate court reversed and
entered summary judgment in favor of defendant. No. 2–05–1197
(unpublished order under Supreme Court Rule 23). We allowed
plaintiff's petition for leave to appeal (210 Ill. 2d R. 315(a)), and now
affirm the judgment of the appellate court.

## I. BACKGROUND

The pertinent and undisputed facts are as follows. On March 20, 1980, Bankers Life Company, now known as defendant, Principal Life Insurance Company, issued a disability insurance policy to plaintiff. The policy provides that defendant will pay monthly benefits "if Total Disability (as that term is defined in this policy) of the Insured commences while the Policy is in force." The policy defines "total disability" as "the complete inability of the Insured due to Injury or Sickness to perform any and every duty pertaining to an occupation (as defined herein) for remuneration or profit." The policy defines the terms "Sickness" and "Injury" as follows:

> "INJURY means accidental bodily injury sustained by the Insured while this Policy is in force. Injury which is a direct or indirect result of physical or mental infirmity, illness or disease of any kind, or medical or surgical treatment therefor or Injury which results in Total Disability which commences more than 90 days after the date the Injury is sustained will be deemed to be Sickness."[1]

In the benefit and premium schedule, the policy prescribes lifetime benefits if the disability resulted from an "injury," but limits the benefit period to five years if the disability resulted from a "sickness."

On January 19, 1999, plaintiff was loading 50-pound tires onto a truck at work. A tire bounced back and struck his right wrist. Plaintiff continued working despite pain and swelling in the wrist. The next day, a medical examination with X-rays revealed only a contusion and strain. However, plaintiff continued to experience pain and swelling in his right wrist. On March 3, 1999, plaintiff received an MRI. On March 3 and 18, based on the MRI, various physicians diagnosed plaintiff as having a tear of the right scapholunate ligament with segmental instability. Dr. Robert Schenck confirmed this diagnosis and recommended surgery. Plaintiff was fully employed from January 19, 1999, through May 17, 1999.

On May 18, 1999, Dr. Schenck performed surgery on plaintiff's right wrist. Exploration of the wrist revealed a complete, irreparable

---

[1]Further, according to the policy: "SICKNESS means sickness or disease of the Insured first manifested while this policy is in force."

rupture of the scapholunate ligament. Consequently, Dr. Schenck performed a scapholunate fusion, inserting pins to attach a bone graft from the distal radius. On August 23, 1999, Dr. Schenck removed the cast from plaintiff's right hand and wrist. Dr. Schenck observed swelling on the dorsal aspect of plaintiff's hand and drainage at the fusion site. Dr. Schenck removed the pins and prescribed oral antibiotics to prevent infection from spreading to the bone. On August 25, 1999, plaintiff returned to Dr. Schenk with complaints of abnormal redness and swelling near the site where the pins had been removed. Cultures from the pin-removal site revealed a "rare growth of staphylococcus species." As a result, Dr. Schenck directed plaintiff to continue taking his antibiotics.

On August 25, 1999, plaintiff applied for benefits under his disability insurance policy by submitting to defendant a verified disability claim notice. Plaintiff identified his injury as the torn ligament in his right wrist, which he incurred while loading tires at work on January 19, 1999. Plaintiff stated that his total disability commenced on May 18, 1999, the date of his wrist surgery. Plaintiff explained: "I was put on disability because of an infection in my wrist that was operated on."

In a letter dated September 8, 1999, defendant acknowledged receipt of plaintiff's disability claim notice. Defendant advised plaintiff: "The Maximum Benefit Period is five years. For disabilities as a direct result within 90 days of an accident/injury, your benefit is extended to your lifetime." Also, defendant requested an attending physician's statement to further process plaintiff's claim. Plaintiff thereafter submitted the statement, prepared by Dr. Schenck, who verified that he "told the patient [plaintiff] to restrict employment activities," and that the restrictions began on May 18, 1999. In a letter dated October 1, 1999, relying on the verified information that plaintiff provided, defendant determined that plaintiff was totally disabled as of May 18, 1999, and awarded him benefits under the policy beginning on June 17, 1999, after the policy's 30-day elimination period.

Dr. Schenck continued to treat plaintiff on a monthly basis for hand and wrist pain. On January 31, 2000, plaintiff complained again of swelling and redness. X-rays revealed that plaintiff suffered from osteomyelitis in the proximal scaphoid and adjacent lunate bones. A biopsy of plaintiff's wrist revealed a rare growth of staphylococcus

-3-

species and mold. As a result, Dr. Schenck referred plaintiff to Dr. David Simon, an infectious disease specialist, who ordered a six-week course of intravenous antibiotics. On March 30, 2000, Dr. Schenck operated a second time on plaintiff's right wrist and discovered that the lunate and adjacent portions of his scaphoid bones were necrotic. Dr. Schenck excised most of the necrotic bone and advised plaintiff that if the scaphoid failed to fuse, he would eventually need a total wrist fusion. On October 22, 2001, plaintiff underwent wrist fusion surgery and an ulnar head replacement on his right wrist.

The record shows that defendant administered plaintiff's claim as having a five-year benefit period. In a July 12, 2001, letter to plaintiff, in which defendant approved plaintiff's continued benefits, defendant noted: "Benefits will continue until June 16, 2004, which is when your benefits will exhaust, as long as you continue to be Disabled per the provisions of your policy and provide Proof of Loss that you are satisfying this policy requirement."

On August 28, 2002, plaintiff requested that defendant reconsider its determination that he was ineligible for lifetime benefits. Defendant responded in a letter dated August 30, 2002. Defendant explained that it was correctly administering plaintiff's claim as a "sickness" under the policy, based on the verified facts that plaintiff gave in his claim forms. Citing the policy provision defining "sickness," defendant noted the policy's 90-day injury limitation. Defendant informed plaintiff that, according to the information in his claim file, plaintiff did not become disabled from the January 19, 1999, injury until May 18, 1999, or 120 days after he sustained the injury. Defendant further explained that because plaintiff's total disability began more than 90 days after the date the injury was sustained, the claim was administered as a sickness and that plaintiff was not eligible for lifetime benefits. Defendant advised plaintiff that if he wished to be further considered for lifetime benefits under the policy, he would need to provide defendant with medical and employment documentation that would support that he became totally disabled within the 90 days that followed the January 19, 1999, work-related injury.

In a letter dated January 24, 2003, plaintiff, through counsel, disagreed with defendant's position, contending: "The injury for which [plaintiff] is disabled occurred on May 18, 1999, the date that he was exposed to a contaminated operation field. This field caused him to

suffer a severe staph infection which resulted in substantial deterioration of his bones. It is for this reason that he is disabled." Therefore, according to plaintiff, "his disability occurred as the direct result of his injury within 90 days of his onset of disability. Therefore, he should be entitled to the benefit extended into his lifetime."

Defendant advised plaintiff's counsel that it would again review its administration of plaintiff's claim. In a letter dated April 1, 2003, defendant denied plaintiff's second request for lifetime benefits. Defendant again cited the policy's definition of "injury" and explained that, because the verified information that plaintiff submitted with his claim showed that plaintiff's disability began on May 18, 1999, more than 90 days after his January 1999 accident, plaintiff's injury was properly deemed a "sickness" under the policy. Defendant also advised plaintiff's counsel that if plaintiff had additional information to support his request for lifetime benefits, he should forward the information to defendant for consideration.

At plaintiff's request, Dr. Jeffrey Coe examined plaintiff and reviewed plaintiff's medical records. In a detailed explanation of plaintiff's medical history and his own findings on examination, Dr. Coe reported as follows. On January 19, 1999, plaintiff suffered a contusion and strain to his right wrist in an accident at work, which caused an internal derangement with scapholunate dissociation. Initial treatment for the January 1999 injury led to only limited improvement, and plaintiff's physicians eventually recommended surgery. Plaintiff underwent surgery on May 18, 1999, and appeared to be recovering through late July 1999. However, recovery became complicated by the development of an internal infection. Based on his findings, Dr. Coe opined that: (1) there was a causal relationship between the injury suffered by plaintiff at work on January 19, 1999, and his current symptoms and state of impairment; and (2) plaintiff's injury has caused permanent partial disability to his right arm.

Plaintiff submitted Dr. Coe's report to defendant in support of his third request for lifetime benefits. In a November 21, 2003, letter, defendant confirmed its denial, explaining that Dr. Coe did not provide any new or different information that would change its position. According to defendant's records, plaintiff's injury occurred on January 19, 1999, but his disability did not begin until May 18, 1999, and, under the terms of the policy, plaintiff's claim could not be

considered an "injury," but rather was deemed a "sickness," for which he has received the appropriate benefits.

On January 7, 2004, plaintiff's counsel requested defendant for the fourth time to review its denial of lifetime benefits to plaintiff. In the letter, counsel contended that plaintiff was injured on May 18, 1999, when he sustained the staph infection. Defendant responded in a January 16, 2004, letter, explaining that it did not dispute that plaintiff's disability began on May 18, 1999. Accordingly, plaintiff's May 18, 1999, disability did not qualify for lifetime benefits because: (1) plaintiff's January 19, 1999, injury, which resulted in his surgery, and the date of his disability, May 18, 1999, occurred more than 90 days apart; and (2) plaintiff's May 18, 1999, disability was the direct or indirect result of surgical treatment and, therefore, the disability was deemed to be a "sickness."

On April 12, 2004, defendant's assistant director of claims spoke with plaintiff's counsel by telephone regarding plaintiff's claim for lifetime benefits. She explained that plaintiff's condition was a direct or indirect result of an illness or disease, *i.e.*, the staph infection, or surgical treatment in the form of the May 18, 1999, wrist surgery. Therefore, plaintiff's claim was considered a sickness under the policy. On June 16, 2004, defendant sent a letter to plaintiff advising him that he had exhausted his five-year period of disability benefits as of June 16, 2004, and that no further benefits were payable for his claim under the terms of the policy.

Thereafter, on October 21, 2004, plaintiff filed a one-count complaint against defendant for breach of contract, seeking lifetime benefits under the policy. Defendant answered and counterclaimed for a declaratory judgment that defendant had no further obligations under the policy. Plaintiff answered defendant's counterclaim by admitting all statements of fact and denying only the appropriateness of defendant's determination of disability benefits under the policy.

Plaintiff and defendant filed cross-motions for summary judgment in defendant's declaratory judgment action. In its motion for summary judgment and in its response to plaintiff's motion, defendant contended that it had properly administered plaintiff's disability claim as a "sickness." Defendant argued that plaintiff's total disability began on May 18, 1999, more than 90 days after his January 1999 injury. Defendant argued alternatively that, even if plaintiff's staph infection

constitutes a "new and independent" injury, which he sustained on May 18, 1999, that injury arose as a result of wrist surgery. Consequently, in the language of the policy, plaintiff's injury was a sickness because it was the result of "physical or mental infirmity, illness or disease of any kind, or medical or surgical treatment therefor."

In his motion for summary judgment and in his response to defendant's motion, plaintiff contended that he was entitled to lifetime disability benefits pursuant to the policy. Plaintiff argued as follows. The language of the policy was ambiguous and, therefore, must be construed in his favor and against defendant. The policy language was against public policy and contrary to the expectations of a reasonable, ordinary person making a contract. Also, plaintiff's staphylococcal infection was a new and separate injury, which was the direct result of the May 18, 1999, wrist surgery. Consequently, plaintiff's disability began not only within 90 days of, but on the same day as, the injury.

In a memorandum decision, the circuit court found that plaintiff was entitled to lifetime disability benefits pursuant to the policy.[2] In its final judgment order, the circuit court granted plaintiff's motion for summary judgment and denied that of defendant.

Defendant appealed from the circuit court's final judgment order. The appellate court found that the pertinent policy language was clear and unambiguous. Further, the appellate court found that it was not unusual, unreasonable, or against public policy for a disability insurance policy to limit benefits by prescribing the conditions that constitute an "injury" or a "sickness."

Applying the policy provision to the undisputed facts, the appellate court found as follows. Plaintiff became disabled more than 90 days after his work-related injury. In light of the stipulated verified facts in plaintiff's own claim submissions, plaintiff could not avoid the 90-day limitation by claiming that the May 18, 1999, staph infection

---

[2]Prior to the entry of judgment, the circuit court granted plaintiff leave to file an amended complaint, in which plaintiff added a claim against defendant alleging bad faith pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2004)). The circuit court granted defendant's motion to dismiss this claim.

constituted a "new" injury. Further, even if plaintiff's disability arose within 90 days of a new injury, *i.e.*, the infection, plaintiff was still not entitled to lifetime disability benefits because this "new injury" was not an "accidental" injury that fell under the policy's general grant of coverage. Because the new injury was not "accidental" and cognizable under the policy's general grant of coverage in the first instance, the appellate court did not consider whether plaintiff's injury was "a direct or indirect result of physical or mental infirmity, illness or disease of any kind, or medical or surgical treatment therefor." The appellate court reversed the circuit court's entry of summary judgment in favor of plaintiff and entered summary judgment in favor of defendant. Plaintiff appeals to this court.[3]

## II. ANALYSIS

This matter is before us on the grant of summary judgment in favor of defendant. Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2004). The circuit court's entry of summary judgment is subject to *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Specifically, the construction of an insurance policy is a question of law, which is reviewed *de novo*. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004); *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001).

When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005); *Central Illinois Light*, 213 Ill. 2d at 153; *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). Because the court must assume

---

[3]Before the appellate court, plaintiff cross-appealed from the circuit court's dismissal of his claim brought pursuant to section 155 of the Insurance Code. The appellate court affirmed the dismissal, from which plaintiff does not appeal.

that every provision was intended to serve a purpose, an insurance policy is to be construed as a whole, giving effect to every provision (*Central Illinois Light*, 213 Ill. 2d at 153), and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract (*Koloms*, 177 Ill. 2d at 479; *Outboard Marine*, 154 Ill. 2d at 108). "All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists." *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5 (1981). If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning (*Central Illinois Light*, 213 Ill. 2d at 153), and the policy will be applied as written, unless it contravenes public policy (*Hobbs*, 214 Ill. 2d at 17).

If the words used in the insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. *Central Illinois Light*, 213 Ill. 2d at 153; *Koloms*, 177 Ill. 2d at 479; *Outboard Marine*, 154 Ill. 2d at 108-09. This is especially true with respect to provisions that limit or exclude coverage. *Outboard Marine*, 154 Ill. 2d at 119; *Pioneer Life Insurance Co. v. Alliance Life Insurance Co.*, 374 Ill. 576, 586 (1940). A contract is not rendered ambiguous merely because the parties disagree on its meaning. *Central Illinois Light*, 213 Ill. 2d at 153. A court will consider only reasonable interpretations of the policy language and will not strain to find an ambiguity where none exists. *Hobbs*, 214 Ill. 2d at 17; *Eljer Manufacturing*, 197 Ill. 2d at 293; *Schnackenberg*, 88 Ill. 2d at 5. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Hobbs*, 214 Ill. 2d at 17.

Exclusions such as those contained in the policy before us are not contrary to public policy. "Disability insurance is designed to provide protection from loss of income caused by an injury or disease which either limits or destroys the insured's ability to work." 10A Couch on Insurance 3d §146:2, at 146–10 (1998); 1 J. Appleman & J. Appleman, Insurance Law & Practice §23, at 60 (1981) (same). "Some policies may expressly limit liability to disabilities that are solely the result of an accident, as distinguished from a disability

which results in part from the insured's prior condition or some other cause than an accident, such as illness or disease." 10A Couch on Insurance 3d §146:12, at 146–30 (1998). Further:

> "Modern policies, however, are more likely to cover disabilities resulting from both accident and illness, but to vary the benefits depending on which. For example, a policy may afford benefits for a limited amount of time where the disability is caused by sickness or disease, but provide longer, even unlimited, benefits where disability results from accident." 10A Couch on Insurance 3d §146:12, at 146–31 (1998).

Accordingly, the extent of an insurer's liability under a disability insurance policy depends on the terms of the insurance contract. 22A Ill. L. & Prac. *Insurance* §383, at 73 (1999).

Additionally, the inclusion of time limitations in insurance policies, such as the 90-day limitation in the policy before us, does not violate public policy. *Kirk v. Financial Security Life Insurance Co.*, 75 Ill. 2d 367, 377 (1978); accord 10A Couch on Insurance 3d §146:22, at 146–48 (1998) (stating that "it is common for the policy to require that the disability occur within a specified time after the injury"); 1C J. Appleman & J. Appleman, Insurance Law & Practice §612, at 128 (1981) (stating that insurance contracts frequently provide "that death or disability must follow within a stipulated number of days following an accident. These provisions have been considered valid and enforceable"). As there is nothing in the insurance contract before us that violates public policy, if its language is unambiguous, it is our duty to give it effect. *Hobbs*, 214 Ill. 2d at 18.

In the present case, viewing the policy as a whole, while not a model of clarity, we conclude that the policy language is unambiguous. The policy entitles plaintiff to lifetime benefits for a disability resulting from an "injury." The policy defines "injury" as an "accidental bodily injury sustained by the Insured while the Policy is in force." A contract term may be unambiguous because it has acquired an established legal meaning. *Schnackenberg*, 88 Ill. 2d at 5. "Accidental bodily injury" refers to an unforeseen or unexpected bodily injury. See *Yates v. Bankers Life & Casualty Co.*, 415 Ill. 16, 19 (1953); *Carney v. Paul Revere Life Insurance Co.*, 359 Ill. App. 3d 67, 82 (2005).

The policy otherwise limits plaintiff to a five-year benefit period for a disability resulting from a "sickness." The policy includes in its definition of "sickness" four types of injuries. Although the punctuation used in an insurance contract cannot be manipulated to alter the plain meaning of the text, rules of grammar may be consulted to illumine the true meaning of the language used. See *Continental National America Insurance Co. v. Aetna Life & Casualty Co.*, 186 Ill. App. 3d 891, 897 (1989); 2 Couch on Insurance 3d §22:5 (2005). In this case, the absence of commas in the policy limitation indicates a series of restrictive clauses that identify or define the antecedent noun–injury. See W. Strunk & E. White, The Elements of Style 3-4 (3d ed. 1979) (discussing restrictive and nonrestrictive clauses). Thus the policy limitation can be separated as follows: (1) an injury which is a direct or indirect result of physical or mental infirmity; (2) an injury which is a direct or indirect result of illness, or disease of any kind; (3) an injury which is a direct or indirect result of medical or surgical treatment therefor; or (4) an injury which results in total disability which commences more than 90 days after the date the injury is sustained will be deemed to be "sickness." By deeming these four types of injury as sickness, the policy excludes them from lifetime benefits for an "accidental bodily injury," but rather limits them to five years of benefits for a sickness. This construction is consistent with a natural reading of the policy, grammar, and the nature of this type of policy.

Plaintiff assigns error to the appellate court's conclusion that defendant properly administered his claim as a "sickness" under the terms of the policy. Plaintiff contends that his "exposure to staphylococcal bacteria is a compensable accidental injury under the Policy." However, plaintiff's contention ignores the policy's two coverage limitations. First, regarding the 90-day period between injury and disability, plaintiff's characterization of the May 18, 1999, infection as an "injury" does not negate the causative effect of the January 19, 1999, accident. Second, even viewing the May 18, 1999, infection in isolation, plaintiff's alleged "new injury" is nonetheless properly limited to coverage as a "sickness" under the policy as being the result of illness or disease or medical or surgical treatment therefor.

## A. "More Than 90 Days"

The appellate court held that defendant properly administered plaintiff's claim as a "sickness" under the policy's 90-day injury limitation period. After reviewing the record, the appellate court concluded that the circuit court ignored the uncontested evidence, which compelled a finding "that plaintiff's injury fell squarely within the policy's definition of a sickness." We agree.

The undisputed evidence demonstrates that plaintiff injured his wrist on January 19, 1999. Although plaintiff sustained the injury in January 1999, he did not become totally disabled until May 18, 1999, more than 90 days after he sustained the injury. The policy defines "Total Disability" as the "complete inability of the Insured due to Injury or Sickness to perform any and every duty pertaining to an occupation *** for remuneration or profit." The date of "Total Disability" is an uncontested fact supported by the record. It was also undisputed that plaintiff's disability arose from the staph infection incurred from the May 18, 1999, surgery, four months after his initial injury at work on January 19, 1999. Moreover, plaintiff himself first provided the May 18, 1999, date of disability in his initial disability claim notice to defendant. He described his "injury" as a torn ligament in his right wrist, incurred on January 19, 1999, and stated that he became totally disabled on May 18, 1999, because of an infection in his wrist following an operation. Plaintiff then submitted an attending physician statement, verified by Dr. Schenck, which also confirmed that his employment activities were first restricted on May 18, 1999.

Subsequent to his retention of counsel, plaintiff has steadfastly contended that the May 18, 1999, infection was a "new" and independent injury. If we were to accept plaintiff's contention, his disability would axiomatically occur within the 90-day limitations period between injury and disability. However, we cannot accept this contention because it ignores the causative effect of the January 19, 1999, accident.

The controlling principles are widely recognized. The secondary results of an accident do not break the causal connection thereto. "Accordingly, the fact that an insured incurs an infection or disease following an accident does not break the thread of causation from the accident to the ultimate result where such infection or disease is the result of the accident." 10 Couch on Insurance 3d §139:30, at 139–68

through 139–69 (1998). In other words: "If *** the insured has received an injury covered by the contract which has necessitated an operation, the performance of the operation does not, in itself, constitute an independent, intervening cause nor prevent the accident from remaining the proximate cause of death [or disability]." 1B J. Appleman & J. Appleman, Insurance Law & Practice §412, at 175-76 (1981). Further:

> "Disability or death resulting from the medical treatment of a covered accidental injury is regarded as having been caused by such injury and compensable under the accident policy, if the treatment administered was necessary or proper because of injury. Whether a particular surgical act performed is one which could be considered an accident, in light of subsequent developments, is something which usually must be determined under the facts of each different case." 1B J. Appleman & J. Appleman, Insurance Law & Practice §414, at 181 (1981).

In other words, where an accidental injury leads to medical complications, which in turn lead to the covered loss, the "accident" is the event that caused the original injury–the "accident" is not the development of medical complications. *Jurrens v. Hartford Life Insurance Co.*, 190 F.3d 919, 923 (8th Cir. 1999) (applying South Dakota law).

Applying these principles to the present case, there is no genuine factual issue regarding the causative effect of plaintiff's January 1999 injury. It cannot go unnoticed that defendant repeatedly advised plaintiff that there was nothing defendant could do under the terms of the policy to alter its benefit determination based on the length of time reported between the date of his injury, January 19, 1999, and the onset of his total disability, May 18, 1999. Defendant repeatedly advised plaintiff, through his counsel, that to be considered eligible for lifetime benefits under the policy, plaintiff would need to provide documentation to support a finding that he became disabled within 90 days of his injury. Defendant also specifically asked plaintiff to confirm whether the date of disability that plaintiff provided on his claim form, May 18, 1999, was in fact the correct date that his disability commenced. Plaintiff did not–and could not–provide any proof to the contrary.

-13-

Indeed, plaintiff's own medical expert, Dr. Coe, clearly negates plaintiff's contention. Throughout his comprehensive report, Dr. Coe refers only to one injury–plaintiff's wrist injury incurred in a work accident on January 19, 1999. According to Dr. Coe, from that single injury flowed plaintiff's resulting symptoms and treatment thereof, which included surgery, and the development of the infection and plaintiff's disability. Dr. Coe specifically concluded that there was "a causal relationship between the injury suffered by Mr. Rich at work for H&W Motor Express on January 19, 1999, and his current symptoms and state of impairment." Plaintiff cannot make the date of disability earlier, and his attempt to make the date of injury later cannot succeed based on this record. See, *e.g.*, *Jurrens*, 190 F.3d at 922-23 (affirming summary judgment for defendant insurer and rejecting plaintiff's contention that infection resulting from accident was itself accident that came within policy limitations period, noting that plaintiff's own expert witness identified initial accident as cause of injury).

### B. Illness, Disease, or Treatment Therefor

Further, even if plaintiff could amend the dates of injury and disability so as to come within the 90-day limitations period, his claim for lifetime benefits fails nonetheless. We conclude that plaintiff's claim for lifetime benefits fails because his alleged new and independent injury, occurring on May 18, 1999, fell within the policy exclusion for injury resulting from illness or disease, or medical or surgical treatment therefor.

The appellate court held that plaintiff's alleged "new injury" was not an "accidental" injury that was cognizable by the policy's general grant of coverage. Accordingly the appellate court did not consider whether the injury was excluded as a direct or indirect result of infirmity, illness, or disease, or medical or surgical treatment therefor. Assigning error to this reasoning, plaintiff contends that injury resulting from surgery can constitute an "accident" under Illinois law.

Considered in isolation, plaintiff's contention is unremarkable. In *Christ v. Pacific Mutual Life Insurance Co.*, 312 Ill. 525 (1924), this court reviewed the definitions and applications of the term "accident" in insurance cases, and adopted the view of the United States Supreme

Court in *United States Mutual Accident Ass'n v. Barry*, 131 U.S. 100, 33 L. Ed. 60, 9 S. Ct. 755 (1889). Under the rule adopted in Illinois:

> "[I]f an act is performed with the intention of accomplishing a certain result, and if, in the attempt to accomplish that result, another result, unintended and unexpected, and not the rational and probable consequence of the intended act, in fact, occurs, such unintended result is deemed to be caused by accidental means." *Yates*, 415 Ill. at 19.

In *Christ*, the insured committed an intentional act of drinking water from a faucet. However, because of an unknown defect in the valve of the water pipes, he drank polluted water and contracted typhoid fever, from which he died. This court deemed the unforeseen and unexpected occurrence in the act preceding the injury to render the injury "accidental." *Yates*, 415 Ill. at 20 (discussing *Christ*). See *Carney*, 359 Ill. App. 3d at 82 (finding insured's injury to be "accidental bodily injury" under terms of disability insurance policy).

In the present case, *Christ* appears conclusive on this point and indicates that plaintiff incurred "accidental bodily injury." See *Reid v. Aetna Life Insurance Co.*, 440 F. Supp. 1182, 1183 (S.D. Ill. 1977) (applying Illinois law), *aff'd without op.*, 588 F.2d 835 (7th Cir. 1978). Accordingly, plaintiff would be entitled to lifetime disability benefits absent any limitations or exclusions in the policy. Indeed, reading the policy as a whole, the exclusion would be superfluous if it limited losses which the policy's general insuring clause did not cover. "An exclusion in an insurance policy serves the purpose of taking out persons or events otherwise included within the defined scope of coverage." *General Insurance Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514 (1995); accord *Hammer v. Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 588-89, 573 A.2d 699, 706 (1990) (collecting authorities). Therefore, the issue is whether or not the injury falls within the policy exclusion for illness or disease, or medical or surgical treatment therefor. See *Litman v. Monumental Life Insurance Co.*, 289 Ill. App. 3d 181, 184 (1997) (identifying dispositive issue as whether insured's death occurred as result of medical treatment, for which accidental death policy excluded coverage); *Reid*, 440 F. Supp. at 1183 (same). The *Christ* and *Carney* cases, upon which plaintiff relies, are inapposite because they do not

involve a plaintiff's injury that resulted from medical or surgical treatment.

Viewing the May 18, 1999, staph infection as a new and independent injury, there can be no credible dispute that the injury was the result of surgical treatment. Accordingly, under the terms of the policy, we must deem the injury to be a sickness, and conclude that defendant correctly administered plaintiff's claim as such. This result is made clear simply by reading the policy exclusion in light of the undisputed facts, inserted with brackets: "Injury [May 18, 1999, infection] which is a direct or indirect result of physical *** infirmity, illness, or disease of any kind [tear of the right scapholunate ligament with segmental instability], or medical or surgical treatment therefor [the May 18, 1999, wrist surgery] *** will be deemed to be Sickness." According to the policy, an insured who sustains "accidental bodily injury" while the policy is in force is entitled to lifetime disability benefits. As a court construed a similar policy: "An accident is an unintended occurrence. If such happens during medical treatment, it is still an accident, but it is not a risk assumed by the insurance company under the terms of the policy." *Whetsell v. Mutual Life Insurance Co. of New York*, 669 F.2d 955, 957 (4th Cir. 1982) (applying South Carolina law); accord *Dinkowitz v. Prudential Insurance Co. of America*, 90 N.J. Super. 181, 188-89, 216 A.2d 613, 618 (Law Div. 1966).

Pointing to the specific language of the policy limitation, plaintiff argues that the policy does not consider injury from surgery for any reason to be a "sickness." According to plaintiff: "By simply omitting the term 'therefor' after 'medical or surgical treatment' this could have been accomplished. Defendant cannot be correct that Injury from surgery for any reason is deemed a Sickness because that interpretation renders 'therefor' meaningless." This argument is unavailing. The policy exclusion at issue in *Dinkowitz* was substantially similar to the limitation in this case: "No such benefit shall be payable if such death results *** directly or indirectly from bodily or mental infirmity or disease in any form, or medical or surgical treatment *therefor*." (Emphasis added.) *Dinkowitz*, 90 N.J. Super. at 183, 216 A.2d at 614. The court in *Dinkowitz* enforced the coverage exclusion in accord with the majority rule.

-16-

Indeed, "[i]t appears that every court that has considered similar exclusionary clauses has held such provisions to exclude from coverage death [or disability] caused by various mishaps occurring during the course of medical treatment." *Whetsell*, 669 F.2d at 956 n.1 (collecting cases); see *Litman*, 289 Ill. App. 3d at 184-87 (discussing cases); *Hammer*, 214 Conn. at 589-91, 573 A.2d at 707 (collecting cases); *Pitman v. Commercial Travellers' Eastern Accident Ass'n*, 284 Mass. 467, 470, 188 N.E. 241, 243 (1930) (finding that death of insured from tetanus infection during surgery fell within exception to accident policy for surgical operation or medical treatment); J. Zitter, Annotation, *What Constitutes Medical or Surgical Treatment, or the Like, Within Exclusionary Clause of Accident Policy or Accidental-Death Feature of Life Policy*, 56 A.L.R.5th 471 (1998). Plaintiff points to no case that has held medical mishaps to be covered under such exclusions.

Plaintiff insists that our conclusion is inconsistent with the reasonable expectations of an insured. However:

> "The parties to an insurance contract may incorporate in it such provisions, not in violation of law, as they choose; and it is the duty of the courts to construe and enforce the contract as made. We are not warranted, under the cloak of construction, in making a new contract for the parties." *Pioneer Life Insurance*, 374 Ill. at 590 (collecting cases).

Reading the policy as a whole, the average policyholder could not reasonably reach a conclusion of coverage in these particular circumstances in light of the policy limitation. Applying plaintiff's contention would render the policy limitation meaningless, and read into the insurance contract something that is not there. See *Hammer*, 214 Conn. at 591, 573 A.2d at 707.

We further observe that plaintiff cannot claim surprise or unfairness by our holding. The insurance application itself shows that plaintiff was quite aware, during the application process, that the policy would limit benefits to five years for a sickness as defined by the policy. Further, when defendant accepted the application and the insurance contract was formed, the policy afforded plaintiff a 10-day "free look" period, during which time he could cancel the policy if its terms and conditions were unacceptable. However, plaintiff not only

chose to purchase and keep the policy, but received disability benefits for five years, pursuant to the policy.

There being no genuine issue of material fact, we conclude that defendant is entitled to a judgment as a matter of law based on either of the two above-discussed policy limitations. Accordingly, we hold that the appellate court properly entered summary judgment in favor of defendant.

## III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*