# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Brown v. Stonebridge Life Insurance Co.**, 2013 IL App (3d) 120295

---

| | |
|---|---|
| Appellate Court Caption | THOMAS W. BROWN, JR., and DAWN BALICKI, Special Administrator of the Estate of Margaret Jane Brown, Deceased, Plaintiffs-Appellants, v. STONEBRIDGE LIFE INSURANCE COMPANY, a Foreign Corporation, and MONUMENTAL LIFE INSURANCE, a Foreign Corporation, Defendants-Appellees. |
| District & No. | Third District <br> Docket No. 3-12-0295 |
| Rule 23 Order filed <br> Motion to publish <br> allowed <br> Opinion filed | April 11, 2013 <br><br> May 30, 2013 <br> May 30, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant insurers were not required to pay benefits to plaintiffs under their mother's accidental death insurance policies, since her death as a result of accidental fentanyl intoxication that occurred during medical treatment was expressly excluded from coverage by the unambiguous language of the medical treatment exclusion in each policy. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 09-CH-388; the Hon. Joseph P. Hettel, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Timothy R. Gatza and William T. Surin, both of Armstrong & Surin, of Ottawa, for appellants.

Jennifer S. Stegmaier and William A. Chittenden, both of Chittenden, Murday & Novotny, LLC, of Chicago, for appellees.

Panel

PRESIDING JUSTICE WRIGHT delivered the judgment of the court, with opinion,

Justices McDade and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiffs Thomas W. Brown, Jr., and Dawn Balicki (collectively plaintiffs) brought an action for declaratory relief against defendants Stonebridge Life Insurance Co. (Stonebridge Life) and Monumental Life Insurance Co. (Monumental Life) asking the trial court to declare that each defendant was liable to pay benefits, to plaintiffs, under accidental death insurance policies issued to their mother, Margaret Jane Brown (Brown). Defendants each moved for summary judgment based on the medical treatment exclusion of their respective policies.

¶ 2    After finding Brown's death arose from the ongoing medical treatment for lower back pain, the court granted summary judgment for each defendant and dismissed the cause of action with prejudice. Plaintiffs appeal the court's decision to grant summary judgment for each defendant. We affirm.

¶ 3                              BACKGROUND

¶ 4    On June 4, 2002, Brown enrolled in a group accidental death insurance plan through Monumental Life and named her daughter, appellant Dawn Balicki, as the beneficiary. Monumental Life issued a certificate of insurance to Brown, effective June 12, 2002, providing the terms, conditions, limitations, and exclusions for accidental death and dismemberment benefits in the amount of $25,000.

¶ 5    On February 24, 2004, Brown applied for additional accidental death coverage with Stonebridge Life, also for $25,000. Stonebridge Life issued a certificate of insurance to Brown that provided the terms, conditions, limitations, and exclusions for accidental death and dismemberment benefits with an effective date of March 2, 2004, and named both her children, Dawn and Thomas Brown, Jr., as the beneficiaries. These policies remained in effect at the time of Brown's death on December 20, 2007.

¶ 6    Brown suffered from a history of chronic low back pain and had undergone three spine surgeries since 1999. From March 15, 2004, through October 18, 2007, Dr. Maria Pilar Estilo provided medical treatment to Brown for her chronic back pain, including administering epidural steroid injections and prescribing various types of narcotic pain medications. In

2005, Dr. Estilo prescribed a fentanyl patch, a pain medication, and gradually increased the dosage of Brown's fentanyl patch from June 2005 through October 2006. The prescribed dosage, as of October 26, 2006, was 125 micrograms per hour. On October 18, 2007, Dr. Estilo examined Brown and continued the fentanyl patch prescription at the 125-micrograms-per-hour dosage.

¶ 7 On December 20, 2007, Brown died from "Fentanyl intoxication." The death certificate lists the cause of death as "accidental" fentanyl intoxication, in that Brown "[i]ngested [a] lethal amount of Fentanyl." The autopsy report showed that Brown had two fentanyl patches on her upper back at the time of death, a 100-microgram-per-hour patch and a 25-microgram-per-hour patch. However, Dr. Estilo testified that prior to her death, Brown did not exhibit symptoms indicative of fentanyl intoxication during her last office examination on October 18, 2007 and nothing indicated that Brown was misusing the patch.

¶ 8 In April 2008, plaintiffs presented proof of accidental death to both Monumental Life and Stonebridge Life. Monumental Life responded by letter, on June 24, 2008, claiming their policy did not cover Brown's death because of the sickness and medical treatment exclusions listed in the policy. This letter indicated the autopsy and toxicology reports of the medical examiner showed that Brown's concentration of fentanyl was "9.7 ng/mL," a level in excess of the amount prescribed by her medical doctor.

¶ 9 Stonebridge Life also responded by letter on June 24, 2008, rejecting plaintiffs' claim for benefits based on Brown's death. The Stonebridge Life letter stated that the exclusions section of the insurance policy barred benefits for injury due to disease or medical treatment. The letter from Stonebridge Life explained that the Brown's death certificate documented death from ingesting a lethal amount of fentanyl (fentanyl intoxication), and the medical examiner's toxicology report revealed the concentration of fentanyl in Brown's system exceeded the amount prescribed by her physician.

¶ 10 On June 4, 2009, plaintiffs filed a complaint for declaratory judgment against Stonebridge Life, in the La Salle County circuit court, asking the trial court to review the terms of the insurance policy and declare that Stonebridge Life was required to pay the $25,000 accidental death benefit. Thereafter, on June 22, 2010, plaintiffs filed a second amended complaint for declaratory judgment, against both Stonebridge Life (count I) and Monumental Life (count II) (collectively defendants), asking the trial court to review the terms of the accidental death insurance policies and find that both of the insurance companies were required to pay plaintiffs $25,000 each under the terms of the policies.[1]

¶ 11 The express language in the Stonebridge Life certificate of insurance includes loss of life as a "loss" under its definitions. The policy further defines injury as a "bodily injury" which:

"1. is caused by an accident which occurs while this insurance is in force under the Policy; and

2. results in Loss covered by the Policy; and

---

[1]The record shows that plaintiffs filed a separate lawsuit against the drug manufacturer of the fentanyl patch, alleging the patch was defective, in Brown v. Alza Corp., No. 09-L-241 (Cir. Ct. La Salle Co.), which was still pending at the time of this appeal.

3. creates a Loss due, directly and independently of all other causes, to such accidental bodily injury."

The Stonebridge policy includes "Exclusions," which states, in relevant part:

"No benefit shall be paid for injury that:

* * *

3. occurs while the Covered Person is taking or using any narcotic, barbiturate or any other drug, unless taken or used as prescribed by a physician;

* * *

7. is due to disease, bodily or mental infirmity, or medical or surgical treatment of these; or

8. does not directly or independently of all other causes create a Loss."

¶ 12    The Monumental Life insurance policy expressly includes the death of the insured as a "loss." This policy defines injury as follows:

"Injury means bodily injury caused by an accident. The accident must occur while the Covered Person's insurance is in force under the Policy. The injury must be the direct cause of the Loss and must be independent of all other causes. The injury must not be caused by or contributed to by Sickness."

The Monumental Life policy, as amended, includes an "Exclusions" section that, in relevant part, provides:

"We will not pay a benefit for a Loss which is caused by, results from:

* * *

• Sickness or its medical or surgical treatment, including diagnosis.

* * *

• taking of any drug, medication, narcotic, or hallucinogen, unless as prescribed by a Physician."

¶ 13    On November 17, 2011, Stonebridge Life and Monumental Life each filed separate motions for summary judgment regarding the second amended complaint. Both motions claimed the facts were not in dispute and revealed Brown was being treated for chronic back problems and died of fentanyl intoxication after receiving a prescription for this narcotic from her treating physician. Defendants each requested the court find the policy treatment exclusions applied and required dismissal of the second amended complaint with prejudice.

¶ 14    On January 10, 2012, plaintiffs filed their response to the motions for summary judgment. Plaintiffs agreed the following facts were not disputed: (1) Brown died from the use of a prescribed medication, fentanyl; (2) Brown died while being treated for chronic lower back pain; (3) Dr. Estilo had been treating Brown for chronic lumbosacral radiculopathy secondary to lumbar scholiosis, epidural scar, stenosis from March 15, 2004 to October 18, 2007; (4) Dr. Estilo prescribed fentanyl for Brown as part of her pain management regimen; (5) Dr. Estilo prescribed up to 125-micrograms-per-hour every 3 days of fentanyl for Brown; and (6) Brown died as a result of fentanyl intoxication on December 20, 2007.

¶ 15    Plaintiffs argued that Brown ingested the fentanyl, as prescribed by the physician, and, therefore, the facts were disputed whether her death was accidental and unintentional. With respect to the Stonebridge Life policy, plaintiffs stated the insurance policy had two ambiguous and conflicting exclusions that should be resolved in plaintiffs' favor. First, according to plaintiff, the Stonebridge Life policy excluded death due to medical treatment for an illness or disease. Second, the same policy contained a separate exclusion for "death that occurs while the covered person is taking or using any narcotic, barbiturate, or any other drug, unless taken or used as prescribed by a Physician." According to plaintiffs, the language of the policy provided an exception to the second exclusion for a death due to the ingestion of narcotics, such as fentanyl, when prescribed by a physician. Since Brown had a physician's prescription for the narcotic that resulted in her death, plaintiffs submit the second exclusion (the drug exclusion) inferred that coverage existed if the insured took the drug as prescribed by a physician.

¶ 16    Plaintiffs also argued that the Monumental Life policy had similar conflicting exclusions that created an ambiguity in the policy as a whole. The Monumental Life policy excluded a loss due to sickness, medical or surgical treatment, including diagnosis. Additionally, Monumental Life excluded a loss that occurs while "taking of any drug, medication, narcotic, or hallucinogen, unless prescribed by a Physician." Plaintiffs again submitted that the second exclusion (the drug exclusion) infers, if the insured incurs a loss while taking a drug as prescribed by a physician, that loss would be not be excluded by the drug exclusion and would be covered by the policy. In both situations, plaintiffs submitted, since the facts indicate that Brown may have used the patch properly, as prescribed by her physician, both exclusions do not apply and accidental death benefits should be paid.

¶ 17    The court held a hearing for arguments on defendants' motions for summary judgment on March 15, 2012. After arguments, the court found that all of the facts imply that "this was an accidental ingestion of Fentanyl." Additionally, since this was a motion for summary judgment, the court noted that it had to consider the facts in a light most favorable to the nonmoving party. The court found, in a case such as this involving a contract between a layperson and an insurance company, the law requires that any ambiguities in the contract should be construed against the insurance company.

¶ 18    As to the exclusions in each policy, the court found that no ambiguity existed. The court found that the specific exclusion regarding the use of any narcotic or other drug, unless taken or used as prescribed by a physician, was intended to exclude benefits for a loss resulting from the ingestion of recreational drugs or drugs that are not prescribed for the insured by a physician. Since Brown was taking a drug that was prescribed by her physician, the drug exclusion was not relevant or applicable to Brown's situation. Therefore, the court found that the only exclusion that applied to Brown's death was the one involving medical treatment. On this basis, the court granted the motions for summary judgment for each defendant after finding the loss resulted from medical treatment and was specifically excluded from coverage according to the unambiguous terms of each policy.

¶ 19    Plaintiff filed a timely appeal challenging the court's ruling granting each defendant's motion for summary judgment and dismissing the second amended complaint with prejudice.

¶ 20                                         ANALYSIS

¶ 21        In this appeal, plaintiffs contend the trial court erred by granting defendants' motions for summary judgment because each policy contains ambiguities and contradictory exclusion clauses which must be construed against defendants and in favor of plaintiffs. Defendants submit that the terms of each of the policies are not ambiguous and expressly exclude coverage for Brown's death, which resulted from ongoing medical treatment at the time of her death.

¶ 22        Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). We review the grant of a motion for summary judgment *de novo*. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 370 (2007); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1993). Additionally, the construction of an insurance policy is a question of law, which is also reviewed *de novo*. *Rich*, 226 Ill. 2d at 370-71.

¶ 23        The first question before this court is not whether Brown's death was accidental but, rather, whether the language of the exclusion clauses of each insurance policy created an ambiguity and inconsistency with regard to ongoing medical treatment involving the use of prescribed narcotic medication. Our supreme court has explained that the touchstone in determining whether ambiguity exists regarding an insurance policy is whether the relevant portion is subject to more than one *reasonable* interpretation, not whether creative possibilities can be suggested. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993).

¶ 24        A court's primary objective, when construing the language used in an insurance policy, is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Rich*, 226 Ill. 2d at 371. To determine the intent of the parties and the words used in the insurance policy, the court must assume every provision was intended to serve a purpose and, giving effect to every provision, the insurance policy is to be construed as a whole, taking into account the type of insurance provided, the nature of the risks involved, the subject matter that is insured, and the overall purpose of the contract. *Id.*; see also *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797, 799 (2000).

¶ 25        Plaintiffs filed a petition for declaratory relief claiming the drug exclusion creates an inference, in each policy, that any person who is taking a drug *as prescribed by a physician* when an accidental death occurs is not excluded from coverage. Based on this interpretation, on appeal, plaintiff submits the trial court should have found the prescription exception to the drug exclusion is inconsistent with the medical treatment exclusion in each policy. Plaintiffs contend that when each individual policy as a whole is considered, an ambiguity exists regarding whether an accidental death resulting from the use of a narcotic actually prescribed by a physician requires the insurance provider to pay accidental death benefits.

¶ 26        In the instant case, each policy contains a separate drug exclusion for death or loss resulting from use of any drug or narcotics which have *not* been prescribed by a physician.

Looking at each policy, as a whole, the only reasonable interpretation of the respective drug exclusions contained in each policy is to exclude coverage where an insured's injury resulted from taking illegal drugs or taking controlled drugs other than as prescribed by a doctor. This provision is not inconsistent with the medical treatment exclusion involving an accidental death resulting from the ingestion of narcotics prescribed by a physician as part of medical treatment for disease or sickness.

¶ 27 When medical treatment involves the use of prescribed narcotics, as in the instant case, the medical treatment exclusion applies on its own accord, without respect to the use of prescribed narcotics, and the drug exclusion for nonprescribed narcotic use is inapplicable. We perceive no inconsistency in the language of each policy.

¶ 28 Next, we apply the undisputed facts to the language of the policies and conclude summary judgment was appropriate. Here, it is undisputed Brown was receiving ongoing medical treatment at the time of her death. This treatment included the prescriptive use of fentanyl to address her chronic back pain resulting from sickness or disease. Consequently, an accidental death from fentanyl intoxication resulting from ongoing medical treatment for a disease or sickness was expressly excluded by the unambiguous language of each policy.

¶ 29 CONCLUSION

¶ 30 For the foregoing reasons, we affirm the judgment of the circuit court granting summary judgment in favor of each defendant, Stonebridge Life and Monumental Life.

¶ 31 Affirmed.