In the
# United States Court of Appeals
## For the Seventh Circuit

No. 20-3510

THE NETHERLANDS INSURANCE COMPANY and CONSOLIDATED INSURANCE COMPANY,

*Plaintiffs-Appellants*,

*v.*

MACOMB COMMUNITY UNIT SCHOOL DISTRICT NO. 185, ED FULKERSON, and JOHN RUMLEY,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 18-cv-4191 — **Colin S. Bruce**, *Judge*.

ARGUED MAY 18, 2021 — DECIDED AUGUST 6, 2021

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Two female students brought claims under state law plus Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681–88, against the Macomb School District, Assistant Principal Ed Fulkerson, and Principal John Rumley (collectively the School District). The

students alleged that the School District had failed to prevent and inappropriately responded to sexual misconduct by a male student. The students' complaint, filed on February 16, 2018, alleged that the sexual misconduct and the School District's responses took place during the spring of 2014 and the fall of 2016. The School District's insurers received notice of the lawsuit on February 22, 2018.

From December 8, 2017, through December 8, 2018, the School District had two insurance policies: a basic policy from the Netherlands Insurance Company and an umbrella policy from Consolidated Insurance Company. The umbrella policy provides coverage only if the basic policy applies. The basic policy has two relevant provisions. It covers (a) liability for sexual misconduct and molestation, and (b) liability for school leaders' errors and omissions. After the School District settled the students' suit for $1.5 million, the insurers brought this suit seeking a declaration of their rights and obligations.

The School District's basic policy has a combination of occurrence-based and claims-made coverages. Its coverage for sexual misconduct and related claims is occurrence-based and applies to misconduct that happened from December 8, 2017, through December 8, 2018. The coverage for school leaders' errors and omissions is claims-made and applies to claims made from December 8, 2017, through December 8, 2018. The misconduct and failed responses occurred before December 8, 2017, and so fall outside the period of the sexual-misconduct coverage. All parties agree that this coverage therefore does not apply. The School District does not contend that any insurer is liable for the temporal mismatch of durations, which cost the School District the benefit of the sexual-misconduct coverage for these events. This leads the School

District to rely on the errors-and-omissions coverage. Although all of the conduct occurred before December 8, 2017, the School District made its claim to the insurers on February 22, 2018, during the duration of this coverage.

On the School District's motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings, the district court held that the coverage for errors and omissions applies to the underlying lawsuit and settlement. This provision contains a sexual-misconduct exclusion:

> Any actual or alleged sexual misconduct or sexual molestation of any person; and any allegations relating thereto that an insured negligently employed, investigated, supervised or retained a person, or based on an alleged practice, custom or policy, including but not limited to any allegation that a person's civil rights have been violated.

The judge stated that this exclusion is ambiguous, relying on the rule in Illinois that courts construe ambiguous language "liberally in favor of coverage". *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). The court gave two reasons. First, it held that the provision could be read to exclude only sexual misconduct by a school employee. Second, it thought that the exception might not bar coverage for "reactions to" a student's sexual misconduct.

Under Illinois law, if the text of an insurance policy is "reasonably susceptible to more than one meaning, [it is] considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371 (2007). But "'creative possibilities' suggested by the parties" fall short of genuine ambiguity. *Hess v. Estate of Klamm*, 2020 IL 124649 ¶16 (2020) (citation omitted). When deciding what events a policy covers, Illinois reads

provisions in the context of the entire policy. *Founders Insurance*, 237 Ill. 2d at 433; *Rich*, 226 Ill. 2d at 371.

The insurers contend that the sexual-misconduct exclusion is not ambiguous. We agree. The exclusion precludes coverage for "[a]ny" sexual misconduct or molestation of "any person" and related allegations. "Any" means any. Netherlands designed this exclusion so that the basic policy's errors-and-omissions coverage would mesh with the sexual-misconduct coverage. The exclusion ensures that the policy as a whole covers claims related to sexual misconduct under the sexual-misconduct provision only. Another provision in the basic policy, for general commercial liability, contains a similar sexual-misconduct exclusion. These sexual-misconduct exclusions allow all provisions of the basic policy to fit together. The problem for the School District arises not from the language of the exclusion but from the fact that the occurrence-based sexual-misconduct coverage does not apply to the events of the students' suit.

The district court's first rationale—that the exclusion is limited to sexual misconduct committed by employees—does not reflect a reasonable reading of the text. The exclusion does not limit the potential class of responders. It applies to "[a]ny" sexual misconduct or molestation of "any person". The language barring related allegations lists some employment-related allegations that the School District "negligently employed, investigated, supervised or retained a person". But the text is broader. It also includes claims "based on an alleged practice, custom or policy, including but not limited to any allegation that a person's civil rights have been violated." That would exclude even coverage for a claim based directly on the male student's misconduct.

What's more, even if the district court were correct that the sexual-misconduct exclusion bars *only* coverage for employees' actions, the exclusion still applies. How could the School District be liable at all, except through the acts of its employees? No one argues that the School District is directly liable for misconduct by students. The exclusion's employment-related language—denying coverage for allegations that the School District "negligently employed, investigated, supervised or retained a person"—reflects the Supreme Court's deliberate-indifference standard under Title IX. A school district can be liable for discrimination in cases of student-on-student sexual misconduct under Title IX *only if* the district has notice and is deliberately indifferent to the misconduct. *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999); *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290–91 (1998). School districts become liable only when their staff does not do enough to catch, stop, or cure known misconduct. *Davis*, 526 U.S. at 642–43; *Gebser*, 524 U.S. at 290–91. (School districts could be liable for employees' misconduct of which supervisors knew, but the students' suit did not allege that sort of misconduct—and the exclusion would apply to such an allegation even on the district court's reading.)

Liability for violations of Title IX depends on the actions of the School District's employees because "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Davis*, 526 U.S. at 640. If the School District and students had not settled the underlying lawsuit, the students would have needed to show that employees who had the authority to address and attempt to prevent or rectify the misconduct were deliberately indifferent or that official policies caused the misconduct. *Gebser*, 524 U.S. at 290–91. See also *Davis*, 526 U.S. at 633; *Jauquet v. Green Bay Area Catholic*

*Education, Inc.*, 996 F.3d 802, 807–08 (7th Cir. 2021). Because only the acts of employees could make the School District liable under Title IX, the exclusion would apply even if the district judge were right to read it as limited to employees' acts or omissions.

The district court's second rationale also misunderstands how a school system could be liable. "Reactions to" students' sexual misconduct reflect how employees have dealt with (or failed to deal with) students' misconduct. Employees' "reactions to" sexual misconduct are the very acts that could establish liability for violations of Title IX. By excluding coverage for "allegations relating" to sexual misconduct, the exclusion necessarily bars coverage for "reactions to" sexual misconduct.

It does not matter how the School District or the students' complaint characterizes "reactions to" the student's misconduct. Illinois courts consider the complaint's factual allegations rather than "the legal label" that parties use. *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 135 (2001); *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755–56 (2005); *Zurich American Insurance Co. v. Ocwen Financial Corp.*, 990 F.3d 1073, 1080 (7th Cir. 2021). When an exclusion blocks coverage for a class of events, that exclusion applies no matter how the parties recharacterize the events. *Lexmark International*, 327 Ill. App. 3d at 135. (And to repeat: the students' complaint did not allege that the School District is *directly* liable for any student's sexual misconduct.)

Consider one consequence of the district court's contrary view. If we interpret the exclusion as inapplicable to "reactions to" sexual misconduct, a school district's failure to pay damages for a student's sexual misconduct would concern its

"reactions to" that misconduct—rather than the misconduct itself—and fall outside of the exclusion. That cannot be so, because it would leave the exclusion with no effect at all. Courts don't read contractual language to be pointless.

When the School District purchased insurance, it bought a basic policy covering sexual misconduct occurring from December 8, 2017, through December 8, 2018. The School District concedes that its occurrence-based coverage for sexual misconduct cannot apply because the student-on-student sexual misconduct, and the School District's response to it, occurred outside of the policy period. The provision that the School District contends applies, the coverage for school leaders' errors and omissions, contains a sexual-misconduct exclusion. That exclusion ensures that the basic policy's coverage for errors and omissions and coverage for sexual misconduct fit together as parts of a cohesive insurance package. The School District cannot avoid that provision's sexual-misconduct exclusion or the structure of the basic policy. To put this differently, the judiciary will not read the exclusion to the errors-and-omissions coverage to turn the sexual-misconduct clause from occurrence coverage to claims-made coverage.

REVERSED